## Commonwealth, ex rel., *v.* Shecter, Appellant.

*Courts—Desertion proceedings—Enforcement of order—Contempt—Order of another court—Municipal Court of Philadelphia—Act of July 12, 1913, P. L. 711.*

1. So separate and distinct are courts in Pennsylvania, and so independent of each other, that even a Court of Common Pleas can only lend its process to enforce a judgment of another court of equal rank, as it is expressly authorized by law to do so.

2. The Act of July 12, 1913, P. L. 711, creating a Municipal Court for Philadelphia County, and conferring upon that court exclusive jurisdiction "in all proceedings brought against any husband or father, wherein it is charged that he has without reasonable cause separated himself from his wife or children; etc.," does not confer jurisdiction upon the Municipal Court to enforce by attach-

ment, or other proceedings, in such a matter, an order made by the Court of Quarter Sessions prior to the creation of the Municipal Court, and the order of the Municipal Court, committing a husband until he should comply with an order of the Quarter Sessions Court to pay a specified sum for the support of his wife, was reversed.

3. It is a reasonable inference from the terms of the Act of July 12, 1913, P. L. 711, that the exclusive jurisdiction of the Municipal Court was intended to relate solely to original proceedings, instituted therein after the date of the act, leaving the Quarter Sessions Court undisturbed as to its rightful jurisdiction.

Argued April 12, 1915.    Appeal, No. 120, January T., 1915, by defendant, from judgment of Superior Court, October T., 1914, No. 233, affirming order of Municipal Court of Philadelphia County, February T., 1914, No. 186, refusing to quash writ of adjudication, in case of Commonwealth of Pennsylvania, ex rel., v. Jacob Shecter.    Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ.    Reversed.

Appeal from the Superior Court.    See 59 Pa Superior Ct. 38.

HEAD, J., filed the following opinion, Judges KEPHART and TREXLER dissenting:

The difficulties, if any, which may attend the proper solution of the question presented to us by this record do not arise because of any complications in the question itself.    On the contrary it is single and simple, and the situation from which it springs may thus be stated.

On December 16, 1913, the Court of Quarter Sessions of Philadelphia County—after a hearing in an ordinary desertion case—ordered and decreed that the defendant, the present appellant, pay his wife "the sum of four 50-100 dollars per week for the support of herself from this date, etc."    On July 12, 1913, P. L. 711, the statute creating the Municipal Court was approved.    In the eleventh section of that act it is declared, inter alia: "The jurisdiction of the said Municipal Court shall be

exclusive, (a) in all proceedings brought against any husband wherein it is charged that......he has neglected to maintain his wife or children." In the final section this general grant of power will be found: "The said Municipal Court,......subject to the provisions of this act, shall have all of the powers of a court of record possessed by the Courts of Common Pleas, and of Quarter Sessions of the Peace and Oyer and Terminer in the County of Philadelphia."

Later on, after the election of the judges and the organization of the Municipal Court, the wife, at whose instance the original proceeding had been begun, filed in the Municipal Court, her affidavit setting forth her husband had failed or refused to comply with said order, and was then some four weeks in arrears. Thereupon that court issued its process, and the defendant was brought in. He filed an answer denying the jurisdiction of the Municipal Court to enforce the order made by the Quarter Sessions, and alleging that any attempt so to do would be "an interference with the powers of the judge and the court having original jurisdiction." After hearing and argument the court, in an opinion filed by President Judge BROWN, determined it had jurisdiction, and made an order directing the defendant to presently pay the sum in arrears, and to continue the payment of the weekly sum fixed by the original order of the Quarter Sessions. It was further ordered "that he stand committed until this order be complied with, or he enter security for the faithful performance thereof." From that order of the Municipal Court this appeal was taken.

Let us concede the sentence imposed by the Court of Quarter Sessions was a regular valid judgment of that court. It would follow, of course, until opened or stricken off by the court that entered it, or until reversed or set aside by a court of superior jurisdiction, such judgment must be regarded as conclusive of everything adjudicated by it. What then was adjudicated? Doubtless that the defendant was a married man, a husband,

with a wife in full life; that he had neglected or refused to maintain and support her, and that, under then existing conditions, the sum named was the proper amount he must contribute weekly to discharge his marital and legal duty. But owing to the nature of the proceeding the judgment did more than adjudicate the facts we have stated. It created a forward, continuous, weekly-recurring obligation to do a certain thing. As each weekly installment would be paid the demand of the judgment, for that limited period, would be satisfied. But with the advent of each new week it would be restored to as full life and vigor as if then newly entered.

If the husband, notwithstanding the judgment defiantly refused to obey its commands, what was the remedy of the injured wife? She could begin a proceeding by petition averring the refusal of the husband to perform the sentence that had been imposed, and invoking the punitive or coercive power of the court to compel such performance. Manifestly such a proceeding would neither invite nor require any review or revision of the judgment previously entered or any reconsideration of any matter or thing adjudicated by it. On the contrary that judgment in all of its integrity would become the very basis and foundation stone on which her new proceeding would rest.

Now when the statute declared the Municipal Court should have jurisdiction "in all proceedings brought against any husband......wherein it is charged...... he has neglected to maintain his wife," it is difficult to see why the proceeding before us is not within both the letter and spirit of the legislative act. Clearly the exercise, by the Municipal Court, of the power invoked, involves no assault upon the constitutional rights and powers of the Court of Quarter Sessions of Philadelphia County, nor would it result in any impairment of the integrity of any judgment entered by that court. The case of Doyle v. Commonwealth, 107 Pa. 20, cannot be controlling of the question before us, and the argument

drawn from what was there decided, is wholly beside the mark.

The conclusion we reach is further strengthened by a consideration of the final section of the statute which declares that in the exercise of the jurisdiction, conferred, the new court "shall have all of the powers...... possessed by the Court of Quarter Sessions of the Peace in the County of Philadelphia." The Municipal Court, by the proceeding we are reviewing, is but exercising the identical power that every one concedes theretofore resided in the Court of Quarter Sessions. In a word, the remedy of the injured wife remains precisely what it was. The obligation of the defaulting husband is unchanged. The coercive power of the court here invoked and applied is exactly that to which he has been subject every moment since the original order was made. The legislature has but changed the source whence that power emanates. We are unable to perceive how this appellant has been aggrieved by the order appealed from.

But it is finally urged that the construction of the statute we adopt would stamp it as retrospective legislation. We have already indicated the reasons that lead us to a different conclusion. But even if in any sense the act could be fairly considered retrospective, it is clearly not so in that sense which makes such legislation objectionable. In Buchanan v. Corson, 51 Superior Ct. 558, we had occasion to review at length the decisions on that subject. We quote again from the language of Mr. Justice AGNEW in Shonk v. Brown, 61 Pa. 320: "The true principle on which restrospective laws are supported was stated long ago by DUNCAN, J., in Underwood v. Lilly, 10 S. & R. 101, to wit: Where they impair no contract or disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, which do not vary existing obligations contrary to their situation when entered into and when prosecuted." Applying this rule, it is clear this appellant can create no barrier

to impede the operation of the statute by the argument tending to show the legislation is retrospective.

It may not be amiss to add a suggestion merely that may tend to promote good practice.   When a proceeding like the one we have been considering, is begun in the Municipal Court, it should be by a petition reciting the record and judgment in the Quarter Sessions on which it rests.   It should set forth the default complained of, the amount in arrears, etc.   When the defendant is brought in he has his day in court.   He might, by answer, deny the existence of such record, or traverse the allegations as to his default, or out of any other matter occurring since the entry of the original judgment that would amount to good cause for stating the command of the court.   The new issue would thus be plainly defined, and the record in the Municipal Court made complete and self-sustaining.

The Superior Court affirmed the order of the Municipal Court.   Defendant appealed.

*Error assigned* was the judgment of the Superior Court.

*John H. Fow,* for appellant.

*Franklin E. Barr,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY MR. JUSTICE STEWART, July 3, 1915:

The appellant was attached by process issued by the Municipal Court of Philadelphia County to answer a charge of noncompliance with an order of court.   He made answer denying the authority and jurisdiction of the Municipal Court to issue the process, for reasons which can be understood only as the facts of the case are more fully recited.   The writ of attachment had been issued on an affidavit made by one Adele Shecter, under

caption of Commonwealth v. Jacob Shecter, in which it was averred that "an order was duly made by the Municipal Court against the above defendant for support of herself; that the said defendant had failed to comply with said order and is now in arrears in his payments upon said order of court to the amount of $18.00." Here is found the only averment of fact, aside from what may be gathered from the opinion filed in the case, and the order and decree appealed from, that the record before us discloses—and that evidently an inaccuracy, as will later appear. The only order and decree made by the Municipal Court was as follows, "it is therefore ordered and decreed that Jacob Shecter pay the sum of $102.50 now due upon said order for the support of his wife, Adele Shecter, that the payment of the sum of $4.50 per week be continued until the further order of the court, and that he stand committed until this order be complied with, or he enter security for the faithful performance thereof." It was from this decree that the appeal was taken to the Superior Court; and upon affirmance there the appeal is now to this court.

From all that so far appears as to the facts, a natural inference would be that appellant had been proceeded against originally in the Municipal Court, and that in this present proceeding that court by its attachment process was attempting to compel compliance with its own order. Neither in affidavit, writ or decree does anything to the contrary appear; and yet, in point of fact, as we learn from the opinion of the learned judge, the original and only proceeding against appellant for the support of his wife whom he was shown to have deserted, was in the Quarter Sessions Court of Philadelphia County, and it was the decree of that court that the Municipal Court was attempting to enforce by this attachment proceeding. The case is a novel one because of the peculiar conditions out of which it arises. Was the process issued, in view of the one fact appearing, namely, that it was not employed to enforce an order or decree of the

court out of which it issued, but that of another, legal? No question is made as to the right of the Municipal Court to employ such process to enforce its own orders or decrees. Although created by the legislature, yet, being a court of record, such right would inhere except as denied it by legislative restriction. But the power here exercised goes far beyond, and is the assertion of a right, which, if it exist at all, must rest on express legislative authority. Nothing short of this will justify its exercise. The mere fact that it is a power not incidental to any other court whether created by the Constitution or legislation is sufficient in itself to convince of this. So separate and distinct are our courts, and so independent of each other, that even a Court of Common Pleas can only lend its process to enforce a judgment of another court of equal rank as it is expressly authorized by law to do so. The primary purpose of an attachment process is to vindicate the authority of the court out of which it issues by compelling obedience to its orders and decrees; incidentally it operates to the benefit of the opposite party to the cause by giving to such party indemnity for the damage suffered by him because of the failure of his adversary to comply with the order of the court; nevertheless, the primary purpose is what we have stated. It is a proceeding for contempt. Lacking the contempt, or rather the charge of it, no attachment lies. It must be based fundamentally on a contemptuous disregard of the authority of the court. Now in this case it is not pretended that any order or decree had been made by the Municipal Court touching or concerning this respondent, either in person or property. That court was without jurisdiction over him in any way whatever when it assumed to attach him to answer a charge that he had failed to comply with an order and decree made against him by another and different court. How could he purge himself before that court of a contempt committed against another court; or how could that court either acquit or convict him? It is settled law that each court

is the exclusive judge of contempts committed against its process. In re Debs, 158 U. S. 564. As early as 1791 this rule was recognized by this court in the case of Penn. v. Messinger, 1 Yeates 2, where it refused to punish a contempt offered to the process of another court, the judges asserting—so reads the report—"that they knew of no case where one court punished a contempt to another court, and they would not carry the system of punishment by attachment further than they were clearly warranted by practice and adjudged cases." In Williamson's Case, 26 Pa. 9, 18, BLACK, J., in speaking of the power in the courts in proceedings for contempt says, "All courts have this power, and must necessarily have it, otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it they would be utterly powerless. The authority to deal with an offender of this class, belongs exclusively to the court in which the offense is committed; and no other court, not even the highest, can interfere with its exercise." In view of these clear pronouncements it is hardly necessary to repeat that legislative authority must be found for the exercise of such power by a court, otherwise it must be held to be illegal.

The contention of the Commonwealth is, that though there be no express grant of such authority in the Act of July 12, 1913, P. L. 711, creating the Municipal Court and defining its functions and powers, yet, considering the purpose of the act in creating the court, the jurisdiction it confers and the necessity for the exercise of such power to enable it to perform its prescribed functions and accomplish the objects intended, a grant of such authority results by necessary implication. As supporting this view our attention is directed to the 11th section of the act which gives the Municipal Court exclusive jurisdiction "in all proceedings brought against any husband or father, wherein it is charged that he has without reasonable cause separated himself from his wife or children, etc." Undoubtedly when an act confers juris-

diction it impliedly grants the power of doing all such acts or employing such means as are essentially necessary to its execution.    But this rule lends but feeble, if any, support to the Commonwealth's contention.    The power that is here sought to be derived by implication is no more necessary to the exercise of the jurisdiction of the Municipal Court than that of any other court.    As we have seen, it is denied to all other courts; why then, if necessary in the case of the Municipal Court, should it have been left to be supplied by implication?    Whether in granting exclusive jurisdiction to the Municipal Court over such offenses as this, the act thereby deprives the Quarter Sessions Court of jurisdiction to enforce its orders and decrees made in cases of like character whilst it was in the exercise of an unquestioned jurisdiction, and which remained uncomplied with after the creation of the Municipal Courts, is a question we are not now called upon to decide.    Certainly if such was the effect, it is not for this court, in order to avoid an inconvenience that may result therefrom to supplement the act with a provision for the transference of pending cases, orders and decrees from the Court of Quarter Sessions to the Municipal Court, with no better warrant for so doing than can be derived from the rule of necessary implication.    To our mind a much more reasonable and stronger inference arises from the absence of such provision in the act creating the court, that the exclusive jurisdiction conferred was to relate solely to original proceedings thereafter instituted, leaving the Quarter Sessions Court undisturbed as to its rightful jurisdiction.    But, however this may be, nothing can be found in the act which expressly or impliedly gives to the Municipal Court power to enforce the decrees of another court, and for this reason we are compelled to hold that the process issued in this case was illegal.    The judgment of the Superior Court is reversed, as is the order of the Municipal Court, and all the proceedings are set aside at the cost of the relator.