Commonwealth ex rel. Kelley et al. *v.* Brown et al.

Argued June 7, 1937. Before KEPHART, C. J., SCHAF-FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Edward Friedman,* with him *John Y. Scott,* Deputy Attorneys General, and *Charles J. Margiotti,* Attorney General, for Commonwealth ex rel. Margiotti, inter-venor.

*Robert T. McCracken* and *George Wharton Pepper,* with them *Warwick Potter Scott, Hubert J. Horan, Jr.,* and *Morris Wolf,* for respondents.

*Francis Biddle* and *Shippen Lewis,* filed a brief for intervenors, as amici curiæ.

OPINION BY MR. JUSTICE LINN, July 7, 1937:

This case involves the validity of the legislation to abolish the Municipal Court of Philadelphia.

On May 19, 1937, an Act was approved entitled "An Act Abolishing the Municipal Court of Philadelphia and transferring actions, books, records, documents and papers in the possession of said court to other courts of

the County of Philadelphia." The judges of the Municipal Court were advised by counsel, as their answer filed in this proceeding shows, that the act and others on the same subject, to be considered in this opinion, were unconstitutional and that the respondents were therefore required to continue in the performance of their judicial duties. Accordingly, the Commonwealth, at the relation of the District Attorney of Philadelphia, instituted this proceeding in quo warranto alleging that both the judges of the Municipal Court and the judges of the Family Court claimed "to have exclusive jurisdiction in such vast fields of litigation as Domestic Relation cases, Juvenile cases, Morals Court cases, and similar matters. . . ." In response to the writ, the judges of the Municipal Court appeared by counsel and answered. The Attorney General intervened, also on the part of the Commonwealth, and set forth "that by reason of the Acts aforesaid [to be referred to], the Municipal Court of the County of Philadelphia has been abolished, its rights, powers, duties, authority, jurisdiction, immunities and emoluments have been divested and transferred to other tribunals."

This court has jurisdiction: Article V, section 3, of the Constitution; *Com. ex rel. v. Glass,* 295 Pa. 291, 145 A. 278.

The Municipal Court was established by the Act of July 12, 1913, P. L. 711, 17 PS section 681. The Act conferred jurisdiction in classes of civil actions at law and in equity for claims not exceeding $600, in personal injury actions not exceeding $1,500, and in minor offenses. Exclusive jurisdiction was conferred in desertion and nonsupport cases and those involving dependent, delinquent and neglected children. Supplements and amendents to the original Act greatly enlarged the jurisdiction and power of the court.

For many years the Municipal Court has published an annual report of its work; several of these, including

the report for 1935, containing some 300 pages, are before us. The general character of the litigation, pending or determined, and of the judicial business transacted in that court, is of course familiar and we take judicial notice[1] of the facts generally disclosed in these reports. In desertion and nonsupport cases, of which the court has exclusive jurisdiction, the report for 1935 shows that at the end of that year, 22,802 support orders were in force, 6,042 being described as active, and 16,760 as delinquent since November 1, 1935. The report states that during the year, $1,354,260.66 was collected on support orders and distributed to the parties to whom the court had ordered payment; 2,848 cases of attachment for nonsupport, and 463 applications for modification and revocation of support orders, were disposed of, not including uncontested petitions of that character. Orders for support have the effect of a judgment. In *Henry's Estate*, 28 Pa. Superior Ct. 541, 543 (1905), HENDERSON, J., said: "The court of quarter sessions is a court of record, and the order of maintenance in such a proceeding is in the nature of a judgment. It is described in the Act of 1857 as a decree. It is binding upon all the parties, and is not subject to collateral attack in a subsequent proceeding. Judgments are the sentence of the law pronounced by the court upon the matter contained in the record: 3 Bl. Comm. 395. . . ." See also *Com. ex rel. v. Shecter*, 250 Pa. 282, 95 A. 468; *Shetter's Case*, 277 Pa. 273, 276, 121 A. 59.

In 1935, the report states, more than 10,000 civil suits were brought and over 4,000 were "disposed of at bar of court"; jury trials were demanded in 1,362 cases. We shall assume, for present purposes, that the business of the court continued without much change, either more or less, from the end of 1935 to date and, without referring to the business of other divisions[2] of the court, take

[1] See *Atchison Ry. Co. v. U. S.*, 284 U. S. 248, 260; *Home B. & L. Assn. v. Blaisdell*, 290 U. S. 398, 444, 445.

notice that at the time the Act to abolish the court was passed, litigation of all classes mentioned was pending; that there were thousands of judgments for maintenance some of which were in default, and therefore in need of the remedial process of the court, and that there were judgments in civil actions in which the judgment creditor would need the aid of execution. With this brief account of the character and status of the work of the court, necessarily a factor in the problem before the legislature, as well as in this court, we come to the challenged statutes.

Five Acts are involved; in his petition the Attorney General grouped them together as a unit of legislation; as they deal with the same subject, they must be considered together: *Com. v. Provident Trust Co.*, 287 Pa. 251, 134 A. 377.

The first Act, the Family Court Act, approved April 28, 1937, P. L. 460, has been held unconstitutional: *Commonwealth ex rel. Margiotti v. Sutton et al.*, 327 Pa. 337.

The second Act was approved May 7, 1937, P. L. 603, nine days after the Family Court Act was approved. It repealed Section 10 of the Municipal Court Act which had conferred certain jurisdiction in civil actions. It also amended Section 11 of the Municipal Court Act which had conferred jurisdiction in certain prosecutions and suits for penalties, and provided that, thereafter, the jurisdiction of the Municipal Court should be exclusive in proceedings which, for present purposes, may be grouped generally as follows: (a) Desertion and non-support cases; (b) proceedings concerning dependent, delinquent and neglected children; (c) proceedings against persons, whether adults or minors, accused of disorderly street walking; (d and e) charges of various

---

[2] The work of the court is conducted and reported in five divisions: Civil, Criminal, Juvenile, Domestic Relations and Misdemeanants.

forms against disorderly children; (f) dealing with deserted and neglected children or children suffering from mental defects. This Act also contained a provision transferring to the Municipal Court from the Quarter Sessions desertion and nonsupport proceedings instituted in that court, pending and undisposed of, with authority in the Municipal Court to complete them and to enforce the judgments entered, though this transfer was mere reënactment of the prior law: see *Com. ex rel. v. Shecter*, 250 Pa. 282, 95 A. 468, and the subsequent Act of July 17, 1917, P. L. 1015, 17 PS section 694. Unless these Acts are all construed together, this Act, conferring exclusive jurisdiction on the Municipal Court as stated, would have repealed important provisions of the Family Court Act, if valid, approved nine days before, conferring on it jurisdiction in the same subjects as to which the later Act made the jurisdiction of the Municipal Court exclusive.

The third Act was approved May 13, 1937, P. L. 621. It purported to transfer to the Family Court, the jurisdiction theretofore exercised by the Municipal Court over houses of detention used in Philadelphia for the care of children who are delinquent, etc.

The fourth Act, approved May 19, 1937, P. L. 724, stated in its title that it was an Act amending the Municipal Court Act and also "defining the Family Court of Philadelphia as a court having jurisdiction with respect to the care, guidance, control, placement and commitment of delinquent, neglected and dependent children under 16 years of age and eliminating the Municipal Court in the County of Philadelphia as a court having such jurisdiction."

The fifth Act, also approved May 19, 1937, P. L. 721, is entitled "An Act abolishing the Municipal Court of Philadelphia and transferring actions, books, records, documents and papers in the possession of said court to other courts of the County of Philadelphia."

The legislative purpose, which was to abolish the Municipal Court, could be accomplished, if at all, by providing litigants with a tribunal in which their rights, vested by litigation, pending or completed in the Municipal Court, could be protected; it was therefore necessary, in putting an end to the court, to transfer to another court the jurisdiction and power to enforce, for example, the thousands of judgments for support referred to above that had been rendered in the Municipal Court. This jurisdiction was intended to be vested in the Family Court. We have, however, been required to hold that the Family Court Act is invalid. The result is that we must now determine how the ineffectual attempt to create the Family Court affects the Acts purporting to abolish the Municipal Court.

Would the legislature have passed this legislation purporting to abolish the court if it had realized that the Family Court Act could not be carried into effect? We are all of opinion that it would not have done so. We must come to that conclusion because this court should not attribute to the General Assembly the intention of legislating without due regard to constitutional limitations. If, for the moment, we should assume that the legislature would have passed the Act abolishing the Municipal Court and made such changes of jurisdiction as could be put into effect without the Family Court, a constitutional objection to such action would immediately present itself. The legislation would then be invalid for want of due process under the fourteenth amendment of the federal constitution and in conflict with the prohibitions against the impairment of the obligation of contracts in the state and in the federal constitutions, because provision was not made protecting rights vested in and by the pending litigation.

"A vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference. Whether it springs from contract or from the principles of the com-

mon law, it is not competent for the legislature to take it away. A vested right to an existing defense is equally protected, saving only those which are based on informalities not affecting substantial rights, which do not touch the substance of the contract and are not based on equity and justice": *Pritchard v. Norton,* 106 U. S. 124, 132; see also *Lewis v. Pa. R. R. Co.,* 220 Pa. 317, 69 A. 821; *Weist v. Wuller,* 210 Pa. 143, 59 A. 820; *Lohrstorfer v. Lohrstorfer,* 140 Mich. 551, 104 N. W. 142; *Germania Sav. Bank v. Suspension Bridge,* 159 N. Y. 362, 54 N. E. 33, and cases cited in those opinions: Cooley, Constitutional Limitations, 8th ed., Vol. 1, p. 592, 593; Vol. 2, pp. 754-757. The principle is illustrated by the rule that while the legislature may prescribe a period of limitation for bringing suits where none existed, or may shorten the time in which suits to enforce existing rights of action may be commenced, in either case a reasonable time must be given by the new law for the commencement of suit before the bar takes effect: *Sohn v. Waterson,* 84 U. S. 596; *Wheeler v. Jackson,* 137 U. S. 245; *Turner v. N. Y.,* 168 U. S. 90; *P. B. & W. R. R. Co. v. Quaker City Flour Mills,* 282 Pa. 362, 365, 127 A. 845; *Lamb v. Powder River Live Stock Co.,* (C. C. A. 8th Circuit) 132 Fed. 434, 439.

It is clear, therefore, that the legislature could not, consistently with due process and the prohibition against the impairment of the obligation of contracts, abolish the court without affording opportunities to the parties to assert rights vested by litigation in the court. Such opportunity is not provided for.

Section 2 of the Act abolishing the court provided: "All books, records, documents and papers in the possession of the Municipal Court of Philadelphia and all actions pending in said court shall on said date be transferred to the courts of common pleas of the County of Philadelphia or to such other courts[3] as may have been

---

[3] We understand this to refer to, or at least to include, the Family Court.

created and in which has been vested some of the jurisdiction heretofore vested in the Municipal Court of Philadelphia.

"The courts of common pleas of the County of Philadelphia and such other court or courts as may have been created are hereby authorized to hear, determine and to dispose of the actions so transferred from the Municipal Court of Philadelphia and shall have full power and authority to enforce any and all orders, decrees, judgments or sentences heretofore entered or imposed in said actions by the said Municipal Court with the same force and effect as if such actions had been originally instituted in the court or courts to which transferred." This section cannot be sustained by itself under the severability clause. If we assumed that it was possible to determine how the jurisdiction, theretofore vested in the Municipal Court, was intended to be distributed by the Acts in question, we should still be confronted with the fact that the Family Court Act is invalid, and, as a consequence, that what relates to it in the legislation abolishing the Municipal Court, necessarily drops out of it.

It is inconceivable that the legislature would have made any redistribution of the jurisdiction and powers vested in the Municipal Court, without the creation of the Family Court; the severability provision must have a reasonable construction: *Mazurek v. F. M. Insurance Co.*, 320 Pa. 33, 38, 181 A. 570. We must therefore hold that without the Family Court the other acts would not have been passed and cannot be sustained. Having reached this conclusion without any difference of view among the members of the court, it is unnecessary to deal with the objection that the legislation is in conflict with sections 1 and 15 of the fifth article of the Constitution.

The writ is dismissed and judgment is entered for the defendants.