## Wilson et ux. v. School District of Philadelphia et al.

*Joseph Sharfsin*, for plaintiffs.

*Robert T. McCracken* and *Robert von Moschzisker*, for defendants.

GORDON, JR., P. J., October 22, 1937—This is a bill in equity brought by S. Davis Wilson and Sarah E. Wilson, his wife, as taxpayers, against the School District of Philadelphia and the members of the board of directors of the district, to restrain defendants from levying and collecting taxes for school purposes for the year 1938. After reciting the manner of appointment of the individual defendants and the act of assembly which gives them official status, the bill avers that section 524 of article V of the School Code of May 18, 1911, P. L. 309, and its amendments, from which defendants derive their authority to fix, determine, and collect taxes for school purposes, are unconstitutional, void, and ineffective, for nine reasons. The bill then concludes with a prayer for an injunction restraining defendants from levying and collecting taxes for school purposes for the year 1938 and thereafter, and from fixing a tax rate for that purpose. To this bill defendants have filed preliminary ob-

jections upon the ground that the School Code has been decided not to be, and is not, unconstitutional, and that defendants, therefore, possess the lawful power and right to fix the tax rate and to levy and collect taxes for school purposes.

From the foregoing outline of the averments of the bill and the objections thereto, it is apparent that the constitutionality of this legislative delegation to the school board of the power to fix the tax rate is the only question raised by the pleadings, and that no answer could be filed to the bill raising issues of fact to be determined by the presentation of testimony. The parties have, therefore, agreed that, in conformity with whatever decision we may reach upon this constitutional question, we may either dismiss the bill or enter such final decree in the case as may appear necessary and proper in the circumstances.

Before discussing this question, it is necessary that the pertinent acts of assembly be reviewed and their provisions stated in some detail. The School Code, under which the public education of this district is now being administered, was first adopted by the legislature by the Act of May 18, 1911, supra. That act conferred upon the board of school directors the general duty of providing a necessary and proper system of public education in districts of the first class. It required the board to provide for a complete system of public education, including buildings, teachers, supervisors, principals, and all other instrumentalities and activities necessary for that purpose, and, in section 524 provided that:

"In all school districts of the first class the school taxes for the following fiscal year shall be levied annually, by the board of school directors thereof, on or after the second Monday of November and before the first Monday of December following.

"The total annual school tax levy, made . . . by any school district of the first class, shall not be less than

five nor more than six mills on the dollar of the total assessment of all property assessed and certified for taxation therein."

This section remained in operation until the passage of the Act of June 21, 1919, P. L. 555, when it was amended so as to fix the tax which the board might levy for the year 1921 and thereafter at 8 instead of 6 mills, thus changing the maximum and minimum limits within which the board was empowered to fix and determine the tax from a spread of 1 mill (not less than 5 nor more than 6), to a spread of 2 mills (not less than 6 nor more than 8). The only other change made by the Act of 1919, supra, in the tax-levying power of the board, relates to the power granted under section 2824 of the Act of 1911, which was so amended as to enable it, if it had assumed any bonded indebtedness of any former school district within its limits, to levy and collect an additional annual tax of one-half mill, to provide for the funding of such debt, beginning with 1921 and yearly thereafter, until such assumed bonded indebtedness had been paid, "after which such school tax-levy shall not exceed 8 mills for any one year on the dollar", as provided by section 524 as amended thereby. Thus, with the passage of the Act of 1919, the maximum tax which the board was authorized to levy was limited to 8½ mills, if there should be an outstanding assumed bonded indebtedness, otherwise the maximum tax was fixed at 8 mills.

The power of the board to levy taxes for school purposes, as thus fixed and limited by the Act of 1919, was changed by the Act of April 28, 1921, P. L. 328, and again by the Act of March 12, 1929, P. L. 20, 24 PS §562. These two amendments are in identical language, except in one particular, which has no bearing upon the constitutional question raised before us, and the board is now operating under the Act of 1929, the power to

levy taxes being conferred by it in the following language:

"In all school districts of the first class, the school taxes for the following fiscal year shall be levied annually, by the board of school directors thereof, on or after the second Monday of November and before the first Monday of December following.

"The board of school directors thereof shall annually levy a tax on each dollar of the total assessment of all property assessed and certified for taxation in said district, which said tax shall be ascertained, determined, and fixed by adding together the following:

"(*a*) An amount which, with all moneys received from the Commonwealth applicable thereto, shall be sufficient to pay the minimum salaries and increments of the teaching and supervisory staff thereof as fixed and provided by law and to pay the contributions of said district to the teachers' retirement system.

"(*b*) An amount sufficient to pay the interest on, and retire the principal of, the indebtedness of said district at maturity.

"(*c*) An amount sufficient to pay all other expenses and requirements of said school district, which amount . . . for the tax year one thousand nine hundred and thirty-two and thereafter . . . shall be equivalent to not less than three, nor more than three and one-half, mills on the dollar of the total assessment of all property assessed and certified for taxation therein."

All of the nine grounds upon which the constitutionality of the Act of 1929 is challenged by plaintiffs in this case were advanced and decided by the Supreme Court in the case of Minsinger v. Rau, 236 Pa. 327 (1912), in which the constitutionality of section 524 of the original School Code of 1911 was before that tribunal for determination, and the Act of 1911 was there decided to be constitutional. Eight of these grounds raised constitutional questions which are in no way affected by the

changes made by the subsequent acts amending section 524 of the Act of 1911 conferring the tax-levying power on the board, and, for reasons that we shall indicate hereafter, we consider the constitutionality of the School Code, so far as those grounds of challenge are concerned, to have been definitely and finally settled by the decision in that case. This leaves for our consideration only the alleged unconstitutional and unlawful delegation by the legislature to the school board of the tax-levying power in the Act of 1929. Plaintiffs contend: First, that since the doctrine of stare decisis is not applicable to constitutional questions (Commonwealth, ex rel. Kelley, et al. v. Brown et al., 327 Pa. 136), this court is at liberty to reëxamine the decision in Minsinger v. Rau, supra, and in effect to overrule that case (Harris et ux. v. Lewistown Trust Co. et al., 326 Pa. 145); and, second, that the Act of 1911 did not in fact confer the tax-levying power upon the school board, while the Act of 1929 has clearly done so, and hence that the decision in Minsinger v. Rau is not a controlling precedent in the case before us.

With the first of these contentions we cannot agree. While it may be conceded that the doctrine of stare decisis has no binding applicability to constitutional questions, and that courts are always free to reëxamine the reasons for such decisions when similar questions arise, that doctrine, if properly understood and applied, precludes courts from overruling a previous decision respecting the constitutionality of a particular act, especially when for many years the previous decision has remained unchallenged and has been accepted and acted upon by all. It would create an intolerable situation, productive of gross inequality and uncertainty in the enforcement and application of laws, if every person affected by a particular law could question its validity in an endless series of successive individual litigations. Such a rule would destroy entirely the stability of the law and produce a condition of perpetual confusion and un-

certainty in its interpretation and application. The validity of the reasoning underlying a constitutional principle may be examined from time to time, when different and successive acts raising it are in question, but once the constitutionality of an act has been decided by the court of last resort, that decision of the same act cannot and should not thereafter be questioned. The eight grounds referred to above, on which the constitutionality of the School Code was attacked in Minsinger v. Rau, in 1912, being identical, not only as to the ground of attack, but also as to the act of assembly passed upon, we are not at liberty to hold the School Code unconstitutional for those reasons. So also, if the Act of 1929 delegating the taxing power to the board of education, which amended section 524 of the School Code of 1911, does not alter the earlier act in such a manner as to present a question different from that considered and decided by the Supreme Court in Minsinger v. Rau, we should decline to reconsider that decision and accept it as a binding precedent in this case.

This brings us to the second contention of the plaintiffs, with which we agree. The Act of 1911 provided that the total tax levy in any one year for school purposes should be not less than 5 nor more than 6 mills, and the plaintiff in the Minsinger case challenged the act on the ground that it was an unlawful delegation by the legislature of the taxing power. In deciding the case, the court was divided four to three, and the dissenting opinion of Mr. Justice Brown was placed squarely upon the contention of the minority of the court, that the act constituted an unlawful delegation of the taxing power. The majority opinion, however, which was written by Mr. Justice von Moschzisker, held that the act was not in fact a delegation of such power. After discussing generally the question of the power of the legislature to delegate the taxing power, Justice von Moschzisker said, page 332:

"The objection that under the School Code the taxing power in districts of the first class is to be exercised by

nonelective boards, is more apparent than real. . . . Practically the legislature itself has fixed the tax levy at a maximum of six mills and simply leaves to its agents the privilege of collecting not less than five mills in any one year; this cannot properly be objected to as unrepublican or as an unlawful delegation of legislative power to an unrepresentative body."

Thus it was held in that case that the maximum limitation which the legislature placed upon the tax which the board was required, in mandatory language, to levy was in itself a levying of the tax by the legislature at 6 mills, and that the board was merely authorized to collect less than the amount levied, if the necessities of the school district permitted. This was in relief of the taxpayer, and rather than conferring the power to tax, the act was held merely to empower the agents of the legislature to relieve from taxation. We, therefore, understand the Supreme Court to have declined, in Minsinger v. Rau, to determine the right of the legislature to delegate the taxing power, and upon that question it is not a precedent. The general discussion in the majority opinion of the right of the legislature to delegate the taxing power was not pertinent to the question then before the court, and, after a careful study of the dissenting opinion, we are by no means convinced that the case would have been decided as it was, had that question been squarely before the court for determination. Indeed, the very distinction which is the basis of the majority opinion is a negative pregnant for the conclusion that the decision would have been otherwise had that question been squarely raised, for, had the majority been of opinion that the taxing power could lawfully have been delegated by the legislature to such a body as this school board, there was no logical reason for drawing the distinction that was there drawn, that the legislature had itself levied the tax which the board was to compute and collect.

Minsinger v. Rau not being an authority upon the constitutional question of the right of the legislature to dele-

gate the taxing power to the school board, two questions remain for our consideration: First, whether the Act of 1929 works such a change in the Act of 1911 as to constitute a delegation of taxing power by the later act. If it does not, we are bound by the decision in the Minsinger case. If it does, the second question arises, namely, whether the legislature can constitutionally delegate that power to a nonelective board of school directors.

From the very beginning of the present school system, the School Code has vested in the school board exclusive authority to determine all questions of expenditure for school purposes. The field and method of education, the number, character and cost of school buildings, together with the power of eminent domain to take private property for this governmental use, the qualifications, number and salaries of the teaching and administrative staffs, and every activity involved in the furnishing of public education, are committed to its unrestrained and absolute decision. The totality of legislative powers in this field is delegated to its agent, the board, without any other restraint than that of its own judgment and conscience. This is conceded. To the same body is also delegated the duty to fix and "levy" taxes for school purposes. Unless, therefore, the act imposing this duty upon the board places a limit upon the amount of taxes that can be levied by it, it necessarily follows that a delegation of taxing power has occurred. The Acts of 1911 and 1919 placed such a limit on the board's power, by providing that the total taxes levied for any one year should not exceed 6 mills under the Act of 1911, and 8 mills under that of 1919, thereby limiting the absolute power over expenditures for school purposes conferred upon the board. This authorization to spend only a limited amount kept the board's activities as agent of the legislature well within the sphere of an administrative agency, and justified the decision in Minsinger v. Rau, that the legislature had itself exercised the taxing power and had not delegated it to the school board.

The Acts of 1921 and 1929, on the other hand, are, in our judgment, so framed as actually to delegate the taxing power without practical limitation on its exercise, notwithstanding they appear superficially to impose limits thereon. In this respect they are deceptive in character, and conceal a grant of taxing power under a mask of apparent limitation. Those acts divide the power granted into three parts, based upon a division of the subject matter for which the tax is to be imposed, and the total power thus granted is the sum of the individual grants. If, therefore, any one or all of the individual grants enable the school board to levy taxes without limit or restriction, the total power granted is equally without limit.

The division of purposes for which the taxes are authorized to be levied are: First, an amount sufficient to pay the minimum salaries and increments of the teaching and supervisory staffs, and the contribution of the district to the teachers' retirement system; second, an amount sufficient to pay the interest and sinking fund charges on the indebtedness of the school district, and, third, an amount sufficient to pay all other expenses and requirements of the district, which should not be less than 3 nor more than 3½ mills on the dollar of the total assessment of all taxable property therein. In the last of these classes, the power of the board is expressly limited. The second class contains no express limitation, but we think that it is in effect limited by the general limitation, placed in another section of the code, on the borrowing power of the school district to seven percent of the assessed value of the real estate in it. So far as the second and third classes are concerned, therefore, the taxing power of the school board may be fairly said to be limited by the act. With respect to the first class, however, the power there conferred is practically unlimited. While the clause dealing with that power apparently restricts the amount of the levy to the minimum salary and increments of the teaching and supervisory staffs, it places no restriction

upon the number of the personnel thereof. Any increase in basic salaries above the minimums provided by the code would have to be computed under the third clause, in which the taxing power is limited to 3½ mills. There is no merit in the contention that in effect this power is practically limited, because the board could not, and would not, abuse its discretion to determine the number of teachers required for school purposes. In measuring the extent of a power granted, the test is not whether it might be abused, but whether it is capable of being exercised without limitation or restriction. There is no presumption that an agent will not act wrongfully in the exercise of the power. If the grant enables him to act without restraint, it is an unlimited power, regardless of the manner in which it might be exercised.

The contention that, from the nature of the subject matter upon which the power granted under clause 1 operates, the board could not, as a practical matter, impose unlimited and excessive taxes, is clearly without merit. Of the total levy of 9¼ mills for the year 1937, 3 mills were levied under clause 3, 1.8168 under clause 2, and 4.4332 under clause 1, and the latter levy comprises more than 75 percent of the total salaries of the teaching and supervisory staffs of the district. Thus it will be seen that the pay of the teaching and supervisory staffs consumes practically 50 percent of the entire expenditure of the district for school purposes. It cannot be said that this principal item of expenditure is not liable to be materially increased by additions to the teaching staffs of the schools. The development of modern pedagogy is in the direction of bringing the students into a closer and more intimate contact with the teacher, by radically limiting the size of classes. Indeed, the dominant authorities on the subject of education today advise the limitation of the number of pupils in a class to five wherever the means available enable that to be done. The whole trend of pedagogic practice is in this direction. An increase of the teaching staffs which might more than double the

taxes necessary for providing such an education method, without subjecting the board's action to the charge of an abuse of discretion, may be considered as well within the bounds of probability. This being so, it cannot be contended that, because of a supposed practical improbability of extensive increases in the teaching staff, the Act of 1929 limits the levy of taxes by the board. Hence, the conclusion is inevitable that that act does delegate to the school directors of the district an unrestricted and absolute taxing power for school purposes.

We are not to be understood, from anything we have said respecting the possibilities of large increases in the public expenditures for the teaching staff of the public schools, to have expressed any opinion upon the wisdom or propriety of such a course of conduct by the board. We have no right or desire to pass judgment on such matters. Questions of that character have not been raised in this case, and, even if they were, the exercise by the board of its discretion in connection therewith could be restrained by us only if it were so reckless and excessive as to amount to a legal abuse of discretion. Nothing in the proceeding before us even suggests that there has been extravagence or disregard of the public interest in the expenditures that the board has made or is contemplating making. Our sole inquiry is into the extent of the power delegated by the legislature, and has no relation to the manner of the board's exercise of that power. If the power, or any part of it, has not been lawfully granted, we are bound to restrain its exercise. If it has, we are equally bound to so declare, and to refrain from expressing our judgment upon the manner of its exercise, or interfering therewith.

The only remaining question to be considered is whether such a delegation of taxing power is lawful. The taxing power has always been recognized as the highest and most important expression of the purely legislative function. Without it the sovereign cannot function effectively, and in a republic it is properly regarded with jealousy, and its delegation to agencies remote from popular control

looked upon with suspicion and distrust. This power, beyond all others, can and should be entrusted only to those so placed with respect to control by the popular will that effective responsibility for its exercise by an agent can be promptly and unmistakably enforced. The people have delegated to the legislature this power as part of the legislative function, and it is fundamental in our organic law that such delegated power cannot be redelegated to another. Discussing the basic constitutional question here involved, it has been repeatedly said, by courts and learned textbook writers, that the legislative function, and especially that of taxation, cannot be delegated by the legislature to others. Thus, in Gray's Limitations of Taxing Power and Public Indebtedness, at page 271, it is stated that:

"The form of government universal in the United States is based, in each instance, upon a written constitution; and all these constitutions provide for a separation of the powers of government into executive, legislative, and judicial departments. The persons who exercise these various functions are the direct representatives and agents of the sovereign power of the state for the fulfillment of their respective duties. It is a fundamental principle that an agent may not, without express authority, delegate his powers and duties to another; especially where those powers and duties are in the nature of a trust. None of these departments of the government (or the persons who occupy the places of trust which constitute them) can delegate their powers to any other agency. Such powers are not privileges, they are solemn duties which cannot be shifted. The legislature, therefore, may not delegate the power of legislation to any other persons or body of persons and all attempts to do so are inoperative and void."

As early in our history as 1847, in the case of Parker v. Commonwealth, 6 Pa. 507, Mr. Justice Bell, in discussing the constitutional limitations on the delegation of legislative power by the legislature, said at page 511:

"Unlike that of the United States, the government of Pennsylvania is not one of enumerated powers. Still, it is a government of limited authority; and it is, therefore, not to be denied that the action of its legislature may be invalid, though it contravene no express provision of the constitution, if it be in violation of the spirit of that instrument, and the genius of the public institutions designed to be created by it. Indeed, it is this species of insidious infraction that is more to be feared and guarded against than direct attacks upon any particular principle proclaimed as a part of the primordial law: for attempts of the latter description will, generally, be met by instant reprobation, while the stealthy and frequently seductive character of the former is apt to escape detection, until the innovation is made manifest by the infliction of some startling wrong."

In the same opinion at page 515, the court said:

"To exercise the power of making laws delegated to the General Assembly, is not so much the privilege of that body as it is its duty, whenever the good of the community calls for legislative action. No man is bound, under the constitution, to accept the office of a legislator; but he who does so accept, cannot, rightfully, avoid the obligations it imposes, or evade the constitutional responsibilities incident to it. As has been well remarked, the constituent is entitled not only to the industry and fidelity of his representative, but to his judgment also, in all that relates to the business of public legislation. Among the primal axioms of jurisprudence, political and municipal, is to be found the principle that an agent, unless expressly empowered, cannot transfer his delegated authority to another, more especially when it rests in a confidence, partaking the nature of a trust, and requiring for its due discharge, understanding, knowledge, and rectitude. The maxim is, *delegata potestas non potest delegari.* And what shall be said to be a higher trust, based upon a broader confidence, than the possession of the legislative function? What task can be imposed on a man, as a mem-

ber of society, requiring a deeper knowledge and a purer honesty? It is a duty which cannot, therefore, be transferred by the representative; no, not even to the people themselves; for they have forbidden it by the solemn expression of their will that the legislative power *shall* be vested in the General Assembly; much less can it be relinquished to a portion of the people, who cannot even claim to be the exclusive depositories of that part of the sovereignty retained by the whole community."

This general constitutional principle has always been recognized, however, as being subject to certain definite exceptions. Thus, it has been held that the taxing power may be delegated by the legislature to those governmental subdivisions of the State, such as municipal corporations, counties, boroughs, and so forth, which, by long usage, have been recognized and become incorporated into our scheme of government as State agencies, for the enactment, through representative legislative bodies, of legislation upon matters of purely local concern:

"There is, nevertheless, one clearly defined exception to the rule that the legislature shall not delegate any portion of its authority. The exception, however, is strictly in harmony with the general features of our political system, and it rests upon an implication of popular assent which is conclusive. This exception relates to the case of municipal corporations": Cooley on Taxation, 2d ed. 63.

"Such corporations" said Mr. Justice Brown in the dissenting opinion in Minsinger v. Rau, supra, "are considered parts of the machinery of the government, governmental agencies, necessary and most effective to manage the local affairs of the people residing in the designated locality, and, by custom immemorial, a portion of the political powers of the State has been delegated to them, to be exercised in local administration. But school directors are not municipal officers. They are not invested with any of the municipal powers, nor are they charged with the performance of municipal functions: Chalfant v.

Edwards, 173 Pa. 246; Dillon Municipal Corporation, Sec. 25; Heller v. Stremmel, 52 Mo. 309."

While school districts have always been recognized as an appropriate and proper method of dividing the State for administrative purposes in matters of public education, we have discovered no instance in which delegation of the tax-levying power to the board of directors of such an administrative subdivision has been attempted, even though the members of such boards were elected by the people, until the adoption of the present School Code. And under it, in districts of the first class, the method of selection of the board has also for the first time been taken away from the people and delegated to the members of the judicial branch of the government. It would be a radical departure, therefore, from our whole scheme of government to place the power of taxation in the hands of a body so remote from the direct control of the people. We know of no instance in which the delegation of this power has been sustained, when it has been transferred to a local nonelective governmental body. Such delegation is an anomaly in a republican form of government, most dangerous in its operation, and, as said by Mr. Justice Brown, vicious in principle, and we see no reason for further extending the exceptions to the salutary rule which prohibits the delegation of legislative powers. The whittling away of basic governmental safeguards is the most insidious danger that constantly confronts our institutions, and courts should be scrupulously watchful to guard against this peril. The multiplication of exceptions would soon destroy the rule entirely, and in time strongly tend to alter our basic form of government, by removing the exercise of its fundamental powers from the representatives of the people, and placing it in the control of boards and commissions not directly chosen by and responsible to them. It is true that the activities of government have become so complex and multifarious, that the legislature cannot be expected to retain immediate direction of *administrative* functions, and has committed them, in most

instances, to appointive agencies. But the condition which produces this necessity cannot justify a similar delegation of *legislative* functions.

It is argued that, since it has always been conceded to be within the power of the legislature to delegate to its appointive agents, such as the park commission, and like bodies, the duty of determining the amount necessary to be expended for particular governmental activities, and to command the local tax-levying body to provide the sums thus fixed, there is no fundamental difference between such a procedure on the one hand, and, on the other, giving the school board the power both to determine the amount to be expended and to levy the tax required to meet that amount. The one, it is claimed, is the equivalent of the other, and to permit the same agent to perform both functions merely eliminates the cumbersome procedure of compelling the municipal legislature to perform the clerical work of computing the rate and formally levying a tax as to the imposition of which it has no discretion. The answer to this argument is that it is in the very consolidation in the person of a single agent of the functions of determining what shall be expended and of fixing the tax that shall be levied to meet the expenditure, that a delegation of all the attributes of the tax-levying power is to be found. And this, as we have already shown, is forbidden by our organic law, and has not been permitted except when the recipient of such a power is a legally recognized elective local legislative body. Essentially, the fixing of the tax rate is as much the exercise of the taxing power as is the determination of the property to be taxed, or of the manner of collecting the tax, and the Act of 1929, by which the legislature delegated the first of these duties to the school board, is in manifest violation of well-established constitutional restrictions upon the power of the legislature.

The Act of 1929 is, therefore, unconstitutional and void. The Act of 1921 is likewise unconstitutional, since,

as we have already pointed out, it is identical in form and substance with the Act of 1929. It does not follow from this conclusion, however, that the school board is entirely without power to fix and determine a tax rate for the year 1938. Eliminating the invalid Acts of 1929 and 1921 the School Code stands as amended by the Act of 1919, for, when an amendment to an act is unconstitutional, the act which it purports to amend remains, especially where, as here, the later act does not repeal the earlier. By the Act of 1919 the legislature itself levied the tax by fixing the maximum limit of the rate to be imposed by the board, and this is not an unconstitutional delegation of legislative power under the decision in Minsinger v. Rau. It follows, therefore, that the board may lawfully fix the tax rate for 1938 within the limits prescribed by that act; that is to say, at not less than 6 nor more than 8 mills, with an added ½ mill to provide for the funding of the outstanding bonded indebtedness of any former school district that was assumed by the present district when it was created.

Accordingly, the preliminary objections are overruled, and it is ordered that an injunction issue restraining the defendants from levying or attempting to levy any tax for school purposes in the school district of Philadelphia the rate of which shall be less than 6 or more than 8½ mills upon each dollar of the assessed value of taxable property therein, if there is any existing and outstanding bonded indebtedness of former school districts originally assumed by said districts, or more than 8 mills, if no such bonded indebtedness is existing and outstanding as aforesaid.

Counsel will prepare and submit a form of final decree to be entered by us in conformity with the foregoing opinion and order.