## Clifford v. Leonardi

14

C.P. of Lackawanna County, no. 99 CV 4236.

*Amil Minora,* for plaintiff.
*Ben A. Nicolosi,* for defendant.
*Jeffrey B. Albert,* for putative intervenor.

NEALON, *J.,* April 15, 2003—Plaintiff has filed a motion for sanctions seeking a default judgment or, in the alternative, an order precluding the defendant from introducing expert medical testimony at trial on the grounds that the defense medical expert, Peter A. Feinstein M.D., has refused to comply with a discovery order issued by Judge Michael J. Barrasse on June 26, 2002. By way of brief background, plaintiff served expert witness interrogatories upon the defendant which requested, inter alia, the following information regarding any defense expert witnesses:

"(4) For all expert witnesses defendants have identified please state the following:

"(a) How many medical examinations were performed at the request of an insurance company, insurance adjuster or attorney representing a defendant in a personal injury action of any kind within the last four years.

"(b) Whether the expert has testified in court or by way of oral deposition, within the past four years, list

the court involved, the date of the testimony and the identity of the attorney calling the expert as a witness.

"(c) Please state whether the expert has hospital privileges, name the hospital and extent of the experts hospital privileges.

"(d) List the number of surgical procedures the expert has performed in the last four years and in which hospitals those procedures were performed.

"(e) List the number of patients the expert has treated in his office or in the hospital in the last four years excluding the medical examination listed in paragraph (a) above.

"(5) For all expert witnesses defendants have identified please state the following:

"(a) The amount of money expert has been paid for the examination of plaintiff.

"(b) The amount of money expert will be paid for his time in testifying for defendant.

"(c) The total amount of money expert will be paid by defendant for his services in connection with plaintiff's case.

"(6) For all expert witnesses defendants have identified please state the following:

"(a) Of the 100 percent of time expert practices medicine what percentage is devoted to performing medical examination of the type listed in paragraph 4(a) above.

"(b) Of the 100 percent of time expert practices medicine what percentage is devoted to treating all other patients.

"(7) For all expert witnesses defendants have identified please state the following:

"(a) Of the 100 percent of income derived directly from the practice of medicine what percentage is derived from performing medical examinations of the type listed in paragraph 4(a) above.

"(b) Of the 100 percent of income derived directly from the practice of medicine what percentage is derived from treating all other patients." (See docket entry no. 21, exhibit "A".)

Defendant provided the information requested in plaintiff's interrogatories 1, 2, 3 and 4(c), but objected to the information sought in interrogatories 4(a), (b), (d) and (e), 5, 6 and 7. (*Id.* exhibit "B".)

Consequently, plaintiff filed a motion to compel answers to his discovery, and on June 26, 2002, Judge Barrasse filed an order which stated that "the defendant has 60 days from the date of this order to comply with the discovery request of the plaintiff, James Clifford, which time period may be expanded upon good cause shown by the defendant." (*Id.,* no. 24.) Defendant subsequently presented a motion in motion court seeking to file its expert witness interrogatory answers under seal and to bar dissemination of the trial deposition of Dr. Feinstein, but by order dated October 3, 2002, we denied the defendant's motion for a protective order. (*Id.* no. 25.) Defendant thereafter served the following supplemental answers to the plaintiff's expert witness interrogatories as per Judge Barrasse's discovery:

"(1) See previously provided answer.

"(2) See previously provided answer.

"(3) See previously provided answer.

"(4)(a) 2,449 from June 30, 1998 to June 30, 2002.

"(b) See document attached hereto as exhibit A.

"(c) See curriculum vitae which has already been provided.

"(d) 1,088 in Wilkes-Barre General Hospital, 49 in Mercy Hospital, Wilkes-Barre, and 12 in Nesbitt.

"(e) 3,022.

"(5)(a) $2,150.

"(b) $2,100 for the first hour of a deposition and $300 for each quarter hour over that period of time.

"(c) Unknown at this point since deposition has not yet been taken.

"(6)(a) 20.5 percent.

"(b) 79.5 percent.

"(7)(a) & (b). Dr. Peter A. Feinstein will not provide this information since it is irrelevant to the case and personal information to him. Neither this court, plaintiff or juries should be entitled to know the personal wealth of an expert witness who testifies at the time of deposition. Because these answers provide the number of independent medical examinations and depositions performed, a plaintiff can calculate Dr. Feinstein's total income, even that income which is unrelated to his work as an expert witness on behalf of both plaintiffs and defendants. No expert should be required to reveal personal wealth information just because they are being utilized in a case." (*Id.,* no. 27, exhibit "E".)

According to the supplemental discovery responses provided by the defendant, Dr. Feinstein performed 2,449 examinations and provided 856 trial depositions for the defense side of litigation during the four-year period from June 30, 1998 to June 30, 2002. At $1,000 per examina-

tion and $2,100 per trial deposition, Dr. Feinstein earned $2,449,000 performing defense medical examinations and $1,797,600 providing defense trial depositions for total defense forensic income of $4,246,600 during that four-year period, *i.e.,* an annual average of $1,061,650 per year. However, since Dr. Feinstein refused to answer interrogatory no. 7 by identifying what percentage of his total professional income was derived from such defense forensic services, plaintiff filed the instant motion for sanctions and on November 20, 2002, the motions court judge issued a rule to show cause why the request for sanctions should not be granted. (*Id.,* no. 29.) A rule returnable hearing was conducted on April 10, 2003, at the conclusion of which this matter became ripe for disposition.[1]

Plaintiff contends in his sanctions motion that a default judgment should be entered against the defendant pursuant to Pa.R.C.P. 4019(c)(3) or that the defendant should be barred from introducing expert medical testimony under Rule 4019(c)(2). In essence, the plaintiff argues that the defendant should be vicariously liable for sanctions based upon Dr. Feinstein's alleged defiance of Judge Barrasse's discovery order. Defendant and the putative intervenor maintain that the information sought in interrogatory no. 7 is highly confidential and not subject to discovery since it will enable litigants, lawyers and the public to ascertain Dr. Feinstein's personal income. By way of hypothetical illustration, if Dr. Feinstein's defense forensic income identified in response

---

1. In the interim, Dr. Feinstein filed a petition to intervene on January 23, 2003, and his intervention petition has been made returnable for a hearing on May 22, 2003. (*Id.,* nos. 33, 43.)

to plaintiff's expert interrogatory nos. 4 and 5 comprises 75 percent of Dr. Feinstein's professional income, then any juror or other person will be able to calculate that Dr. Feinstein earned $1,415,533.33 in annual professional income.

Defendant and the putative intervenor rely heavily upon *Mohn v. Hahnemann Medical College and Hospital of Philadelphia*, 357 Pa. Super. 173, 515 A.2d 920 (1986) where the court distinctly held that evidence regarding a defense medical expert's receipt of fees for medical-legal cases *other than the one being tried* was inadmissible. The *Mohn* court concluded that although an expert's bias is always subject to scrutiny, "we do not think this encompasses the emptying of one's pockets and turning them inside out so that one's financial worth can be open to scrutiny." *Id.* at 181, 515 A.2d at 924. In granting a new trial based upon the erroneous cross-examination of a defense expert, the Superior Court remarked that "[c]redibility was the question, and the permissible bounds of assailing it were exceeded when the expert's total income, unrelated . . . to the 'results of the trial' was exposed to the jury" since "the nexus between [the expert's] compensation for *all* services rendered (which included work for private and governmental agencies, patients and other law firms) . . . and his credibility on the witness stand is tenuous at best." *Id.* at 181, 515 A.2d at 924-25. (emphasis in original)

By challenging the propriety of interrogatory no. 7 under *Mohn,* the defendant and putative intervenor question the soundness of Judge Barrasse's discovery ruling and effectively seek reconsideration of his order dated June 26, 2002. Under the coordinate jurisdiction doc-

trine, judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions. *Van Zandt v. Holy Redeemer Hospital,* 806 A.2d 879, 888 n.7 (Pa. Super. 2002); *Yamulla Trucking & Excavating Co. Inc. v. Justofin,* 771 A.2d 782, 784 (Pa. Super. 2001). The coordinate jurisdiction rule falls within the "law of the case" doctrine, *Buck Hill Falls Co. v. Press,* 791 A.2d 392, 396 (Pa. Super. 2002), "which instructs that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court." *Kroptavich v. Pennsylvania Power & Light Co.,* 795 A.2d 1048, 1054 (Pa. Super. 2002). Ergo, we would contravene the coordinate jurisdiction rule if we revisited or reconsidered Judge Barrasse's discovery ruling as advocated by the defendant and putative intervenor. See *Zane v. Friends Hospital,* 770 A.2d 339, 340-41 (Pa. Super. 2001).

The narrow issue before us is whether sanctions should be imposed upon the defendant, Linda Leonardi, pursuant to Pa. R.C.P. 4019 (c)(2) and (3) based upon Dr. Feinstein's failure to produce financial worth information in compliance with Judge Barrasse's order of June 26, 2002. The Rules of Civil Procedure do not authorize vicarious liability for discovery misconduct by exposing a party to sanctions due to the unsolicited actions of that party's expert or witness. Cf. *Pavelik & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120 (1989) (law firm was not vicariously liable for sanctions based upon bad faith conduct of an individual member of the firm). See also, Weston, *Court-Ordered Sanctions of Attorneys: A Concept That Duplicates the Role of Attorney Disciplinary Procedures,* 94 Dick.L.Rev. 897, 928 n.98 (Sum-

mer 1990); Joseph, *Current Issues In Discovery,* 430 Practicing Law Institute/Lit. 263, 319 (1992). Pa.R.C.P. 4019(c)(3) provides for the entry of a default judgment solely "against the disobedient party or party advising the disobedience." Preclusion of testimony may also be warranted under Rule 4019(c)(2) if a party *or its agent* engages in an egregious discovery violation. See *e.g., Pioneer Commercial Funding Corp. v. American Financial Mortgage Corp.,* 797 A.2d 269 (Pa. Super. 2002) (bank's former counsel was precluded from testifying as a discovery sanction since the attorney, as an agent for the bank, was part and parcel of numerous discovery violations). Instantly, there is no indication that Dr. Feinstein is an officer, employee or managing agent under the control of the defendant. As evidence of that fact, we note that Dr. Feinstein has retained separate counsel and is seeking to intervene as a party so that he can pursue this discovery issue even if the defendant declines to do so.

Accordingly, there is no evidentiary support in the record for making the defendant, Linda Leonardi, vicariously liable for sanctions under Rule 4019(c) based upon Dr. Feinstein's refusal to furnish information he deems privileged and non-discoverable. Thus, plaintiff's motion for sanctions against the defendant will be denied. We express no opinion as to whether the plaintiff may seek recourse against Dr. Feinstein individually via a motion for civil contempt or other sanctions. In that event, however, we would note that it is well settled that "each court is the exclusive judge of contempts committed against its process." *Commonwealth ex rel. v. Shecter,* 250 Pa. 282, 289-90, 95 A. 468, 470 (1915); *Langendorfer v. Spearman,* 797 A.2d 303, 307 (Pa. Su-

per. 2002). Accord *Garr v. Peters,* 773 A.2d 183, 189 (Pa. Super. 2001) ("[a] court may exercise its civil contempt power to enforce compliance with its orders . . ."). For that reason, one judge cannot punish a person for a contempt committed before another court. See *Common-. wealth v. Lofton,* 389 Pa. 273, 281, 133 A.2d 203, 206 (1957). Hence, if the plaintiff seeks to enforce Judge Barrasse's discovery order via a petition for civil contempt or other sanctions, such a request should be presented to Judge Barrasse in accordance with the coordinate jurisdiction doctrine.

## ORDER

And now, April 15, 2003, upon consideration of plaintiff's motion for sanctions, the memoranda of law submitted by the parties and the putative intervenor, and the oral argument of counsel on April 10, 2003, and inasmuch as the Pennsylvania Rules of Civil Procedure do not provide for vicarious liability for sanctions as a result of discovery violations by an expert or witness, it is hereby ordered and decreed that the plaintiff's motion for sanctions under Pa.R.C.P. 4019(c)(2) and (3) is denied without prejudice to the right of the plaintiff to request sanctions or a finding of civil contempt directly against the defendant's medical expert in question.