Tomilio *v.* Pisco et al., Appellants.

Argued April 30, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

424

*W. J. Fitzgerald,* of *Kelly, Balentine, Fitzgerald & Kelly,* for appellants.

*Frank W. Coyne,* for appellee.

OPINION BY PARKER, J., September 30, 1936:

This is an action in the form of a feigned issue to determine who is entitled to the proceeds of certain policies of life insurance. Frank Ross, who for many years was an employee of the International Textbook Company (hereafter referred to as International), had several insurance policies on his life in the aggregate amount of $1,000 all on identical forms. The Aetna Life Insurance Company (hereafter referred to as Aetna) had issued a group policy to International and the policies in question were issued to insured in pursuance of the group policy. The policies provided that in the event of death the proceeds should be paid to insured's wife, if living, and if not, then in turn to his children, his father and mother, his brothers and sisters and his estate. Insured's wife died before he did and the next surviving relatives were a sister, two nephews and a niece. The proceeds were claimed by Josephine Tomilio, the wife of a step-son on the one hand by virtue of a change in beneficiary, and by the sister, nephews and niece on the other hand. Aetna on its petition for interpleader was permitted to pay the money into court that the rights of the claimants might be determined.

With reference to a change of beneficiary the policies provided: "If you care especially to name a beneficiary, you may arrange to do so by a written request to the International Textbook Company."

A jury found for plaintiff thereby establishing for present purposes the credibility of plaintiff's witnesses who were not contradicted. Frank Ross had lived with his step-son and his wife, the plaintiff, for twelve years prior to his death on January 28, 1934. After the death of the wife of Ross he expressed his intention of making plaintiff beneficiary in the policies here involved. Grace Coglizer was employed by the International as a trained nurse and in that capacity called on insured several times during his last illness. She testified that the insured told her he had not named anyone to get his insurance with the International and that he wished Josephine Tomilio to get it. On January 25, three days before his death, the witness procured from her employer, International, a form used for designation of beneficiary and took it to insured's home. On the occasion of this visit insured again stated that he wished Josephine Tomilio to be named beneficiary in the insurance policies which he held with International. The witness suggested that he sign his name on the form provided for the purpose but he was so weak due to his illness that he was unable to sign his name and the witness then assisted him in an endeavor so to do, but together they were unable to make a legible signature. At this point Miss Coglizer testified: "Q. It has been testified that at the conclusion of this business that day when he endeavored or made his mark on the card, you said, 'That is all right, that is enough'? A. Yes, sir; he was unable to hold the pen or pencil because of the trembling of his hand, and he said he couldn't do it, and I said I would help him, and I tried to guide him, but even with that he couldn't do it; so I said that would be sufficient. Q. For the purpose of making this change or transfer of beneficiary? A. Yes. Q. When

you returned to the office and returned them to Miss Doll did you give her any instruction as to the purpose of these cards? A. Well, I told her what I had done. Q. You told her who was to be named as beneficiary? A. Yes, sir. Q. And that was Josephine Tomilio? A. Yes, sir." Three witnesses were called into the room and requested to witness the signature. As Miss Coglizer thought the card was not large enough to hold the signatures of the three witnesses, she used another card and had each witness sign his name on the card in attestation of the signature of the insured. Two of the three witnesses were called and they corroborated all that Miss Coglizer said with relation to the execution of the request for change of beneficiary. The card on which insured made his writing and the card on which the witnesses subscribed their names as well as the name of the beneficiary were received in evidence. The card described as a designation of benficiary, printed in a foot note[1], shows an undecipherable series

Frank Ross

[1] Employer should forward at once to Home Office of Aetna Life Insurance Co. when executed.

Date......................

## DESIGNATION OF BENEFICIARY

Under Group Insurance Policy No. 647 Sub-No. 658 issued to my employer ..........................................
by the Aetna Life Insurance Company, of Hartford, Connecticut. I have made no assignment of the above insurance, and under and subject to the conditions of such policy I hereby annul and revoke any former designation of death beneficiary thereunder and especially designate as my beneficiary in event of my death:
[signature]
..............................related to me as .............
..............................related to me as .............
..............................related to me as .............
(If more than one named, insurance shall be payable equally unless otherwise provided herein)

If any beneficiary above designated predeceases me, the interest of such beneficiary shall vest in the surviving beneficiary or

of curves and strokes about the center of the card and several lines above a line provided for signature of employee.

Charles Saglioco testified that when insured had finished making his signature or mark Miss Coglizer said to him, "That is good enough," and that she then called the three persons present to sign their names as witnesses on the separate card and at the same time placed on the card the name of Josephine Tomilio for the purpose of indicating the exact name of the new beneficiary. Connie Saglioco testified that when insured had finished his efforts to make his signature Miss Coglizer said, "That is all right, when I go in the office I will hand it in." It is apparent that the jury inferred from this evidence that the insured assented to the statement of Miss Coglizer that the marks made would be accepted as the signature of the insured and that she would file the paper with International so that the change of beneficiary should be complete. It will be observed that the number of the group policy and the series number of the insured's account were inserted in the form. The blank space provided for the name of the new beneficiary was not filled in by Miss Coglizer or the company before the death of Frank Ross.

This brings us to the sole question to be decided: Was there a valid designation by Frank Ross of Josephine Tomilio as beneficiary of the policies furnished by International? "The holder of a policy of life insurance who desires to change the beneficiary can do so only in

---

beneficiaries, if any, but if no beneficiary survives me I request that the insurance be payable as prescribed in said group policy.

This designation of beneficiary shall cover existing insurance and additional insurance, if any, issued hereafter.

Signed ...................................

Employee

Witness .......................................................

Approved ................................................ Employer

By ...........................................................

accordance with the terms of the policy": *Stoll v. Boyle,* 116 Pa. Superior Ct. 64, 67, 176 A. 43; *Kress v. Kress,* 75 Pa. Superior Ct. 404, 407; *Grant v. Faires,* 253 Pa. 232, 97 A. 1060; *Sproat v. Travelers' Ins. Co.,* 289 Pa. 351, 137 A. 621. The company may waive compliance with a provision inserted for its benefit: *Riley v. Wirth,* 313 Pa. 362, 169 A. 139; *Scheid v. Storch,* 271 Pa. 496, 115 A. 841; *Royal Arcanum v. Behrend,* 247 U. S. 394, 401, 38 S. Ct. 522; *Sanes' Est.,* 91 Pa. Superior Ct. 466, 473. "Paying the proceeds into court in discharge of its liability on the policies is conclusive proof of waiver": *Riley v. Wirth,* supra, p. 366; *Skamoricus v. Konagiskie,* 318 Pa. 128, 132, 177 A. 809. "But, where the rights of others have become vested by a member's death, the society cannot and does not waive such rights by paying the fund into court: 'As against the original beneficiary, the society cannot, by any act or omission occurring after the member's death, waive compliance with provisions governing the mode of changing beneficiaries, since immediately on the member's death the original beneficiary's rights became vested' ": *Grant v. Faires,* supra, p. 238. This statement is clear when read in connection with the facts appearing in that case.

We will therefore direct our attention to the rights of the parties and the situation existing prior to the insured's death keeping in mind that the only provision in the policy bearing on the subject is that the insured may arrange to change beneficiaries "by a written request to the International Textbook Company." There are three matters that are referred to by appellant in connection with the request for a change, viz: the character of the signature, its location on the paper, and the failure to place the name of plaintiff therein.

"As a general rule, a party may use any character, symbol, figures, or designation he thinks proper to adopt as a signature, and be bound thereby, provided it was used as a substitute for his name": 58 C. J. 720.

A signature used by a person may be sufficient to give validity to an instrument although it is illegible: *Sheehan v. Kearney*, 82 Miss. 688, 691, 21 S. 41, 35 L. R. A. 102. However, the writing must be made with an intent to execute the instrument as a completed document: *Plate's Est.*, 148 Pa. 55, 23 A. 1038; *Estate of Mary Jane Wilson*, 88 Pa. Superior Ct. 556; *Kimmel's Est.*, 278 Pa. 435, 123 A. 405. "A cross, or a scratch, or a scrawl, or a dot, or a dash, or a flourish, unassisted by the name, imports no more than would a blot, or a stain, or any other accidental discolouration of the paper at the foot of the instrument": *Greenough v. Greenough*, 11 Pa. 489, 497. In *Knox's Est.*, 131 Pa. 220, 18 A. 1021, a testatrix signed the instrument "Harriet" and it was upheld as a testamentary disposition. Mr. Justice MITCHELL there said (p. 232) : "As in all cases where the intent is the test, there can be no hard and fast legal rule as to form. The statute requires that the signature shall be at the end, and that requirement must be met without regard to intention, but what shall constitute a signature must be determined in each case by the circumstances." It is the intent with which the mark is made that is controlling.

The testimony of Miss Coglizer and the two other witnesses is to the effect that the insured said in their presence that he wished to change the beneficiary to Josephine Tomilio. This of course would not be sufficient for a mere unexecuted intention is not enough to change the beneficiary of a policy: *Sproat v. Travelers' Ins. Co.*, supra; *Stoll v. Boyle*, supra; *Skamoricus v. Konagiskie*, supra. Here however when the insured finished writing three persons wrote their names in his presence in attestation of the fact that the mark was intended to be his signature and he was assured by the nurse that it was a sufficient signature and that it would be taken to the company for the purpose of having the change noted on the books of the company. It is by those facts

that the case we are considering may be distinguished from *Plate's Est.,* supra, where the testimony showed that a testator abandoned his attempt to sign his name. In the present case there was sufficient evidence to support a finding by the jury that Ross intended the marks to represent his signature in execution of a completed document. The jury concluded that it was so intended.

"While the signature should be placed at the foot of the instrument, it is not necessary [in the absence of a statutory requirement] that the signature appear at the end of the instrument......A signature placed between two parts of an instrument will apply to the whole instrument if it is shown to have been so intended": 58 C. J. 724. This question has frequently been considered in construing provisions of the Statute of Frauds. "All sections, both of the English and American statutes, require signature. It was early held that this did not mean a signature at the end of the writing, and there is no doubt that a signature may be put at any place in the writing unless the statute expressly requires subscription": 1 Williston on Contracts, §585. Our Wills Act of 1917 requires that the signature shall be at the end thereof (20 PS 191) but we know of no statute, nor has any such been called to our attention, requiring an instrument such as the one in question to be signed at the end. Taking into consideration the weakness of the insured at the time and all that has been shown with reference to the circumstances, it is most apparent that the jury were warranted in concluding that the intention of the testator was to execute the paper in question by signing at the place he did. In any event, the part of the writing above the signature is a request for change of beneficiary.

So far as we are concerned with the failure of the insured to insert in the writing the name of the new beneficiary, the principles involved are not essentially different from those involved in the transfer of stock in

a corporation where the name of the transferee is left in blank. "A share of stock is sufficiently transferred as between the transferor and the transferee by the delivery of the certificate with a blank assignment and power of attorney to transfer the stock on the books of the company": 14 C. J. 675. While this matter is now governed in this state by the Uniform Stock Transfer Act, the law was substantially the same prior to its enactment. The power is not revoked by the death of the party giving it. When the blanks are filled in the transfer operates as of the date of the blank assignment and power but does not apply to subsequently acquired stock: *N. Y. & N. H. R. R. Co. v. Schuyler,* 34 N. Y. 30; *Bridgeport Bank v. N. Y. etc. R. Co.,* 30 Conn. 231. The delivery of the transfer with the name of the transferee in blank is prima facie evidence that the recipient is authorized to insert a name. Such transfers are given the effect of written instruments. By like reasoning the writing purporting to change the beneficiary was not void by reason of a failure to insert the name of the new beneficiary and the power reposed in the agents of the International to insert the name was not revoked by the death of the insured. Here by reason of the nature of the transaction and the specific instruction given the agent was not authorized to place in the blank any name but that of the plaintiff and such power was not revoked by death. It was a valid request in writing for a change of beneficiary as required by the policy, operative as of the time International received the request.

Miss Coglizer was an employee of International and it was as such that she undertook on behalf of that corporation to have executed a paper that would make a change in the beneficiary. While she was primarily a nurse, she was, it may be inferred, acting in the capacity of a welfare agent promoting the interest of the employees. The character of the insurance also was

indicative of a like voluntary endeavor on the part of the company to assist its employees. It may therefore be further assumed that the employment of Miss Coglizer extended to just such matters as were here undertaken by her. The evidence is clear that acting in such capacity she accepted the paper with the understanding that she would insert the name of Josephine Tomilio in the blank space in the request signed by the insured. It was delivered to the proper department of International and there allowed to remain without objection or answer until after the death of Ross. The policy did not provide, as many such policies do, that the change should not be effective until the name was actually changed on the books of the company, but only that a change might be made by a written request of insured to the company. The request was made prior to death and it is upon that situation that the relative rights of plaintiff and the defendants are to be determined. We are all of the opinion that the facts were sufficient to sustain a finding by the jury that the plaintiff became the beneficiary under these policies prior to the death of the insured.

Judgment affirmed.