532 A.2d 339
COMMONWEALTH of Pennsylvania, Appellant,

v.

Roy Gray BOND, Appellee.

Supreme Court of Pennsylvania.

Argued March 13, 1987.

Decided Oct. 15, 1987.

Thomas F. Morgan, Dist. Atty., Joseph A. Curcillo, III, Asst. Dist. Atty., Clearfield, for appellant.

John R. Ryan, Colavecchi & Ryan, Clearfield, for appellee.

Before LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

PAPADAKOS, Justice.

In this appeal, we are asked to rule on the interrelated issues of whether a trial court's judicial notice of its own calendar establishes a record for purposes of granting continuances to the Commonwealth averring due diligence

174

under Pa.R.Crim.P. 1100(c), and whether a defendant is required to file specific, rather than general, objections to Commonwealth motions for such continuances.

In a complaint signed on October 2, 1982, Appellee was charged with theft of a motor vehicle and receiving stolen property. The run date (the 180–day limit) was April 6, 1983.

In Clearfield County, the district attorney schedules the court's criminal case docket. The district attorney scheduled the Appellee's case for trial during the weeks of March 14 and March 21, 1983, but was not reached for trial. On April 6, 1983, the district attorney filed a Petition for Extension of Time and specified that "due to the number of cases scheduled during those weeks and the unavailability of the courtroom since it was being utilized with other cases from the criminal list in order of priority in accordance with Rule 1100 the Commonwealth was unable to dispose of this case during the above weeks." At the presentation of the petition, the district attorney reiterated that the Appellee could be tried "but for the fact that other cases with more serious Rule 1100 limitations were called before the Court and with the court's limited criminal court terms this could not be accomplished." The court granted the motion, and trial was rescheduled for June 11, 1983. Defense counsel objected to the extension without elaboration.

On June 8, 1983, the district attorney once again petitioned the trial court for another extension. In support of his motion, the district attorney pointed out that the Appellee had been tried earlier on a different complaint during the week of May 23, 1983, and that a jury for this case could not have been selected from the same panel. The petition formally stated in pertinent part:

5. That this case was scheduled for criminal court during the weeks of March 14 and 21, 1983. Due to the number of cases scheduled during those weeks and the unavailability of the courtroom since it was being utilized with other cases from the criminal list in order of priority

in accordance with Rule 1100, the Commonwealth was unable to dispose of this case during the above weeks. 7. That this case was scheduled for criminal court during the weeks of May 16 and 23, 1983. The defendant was tried on another criminal matter, case number 82–637–CRA, during the week of May 23, 1983, and a jury could not be selected on this case from the same panel. Therefore, the Commonwealth was unable to dispose of this case during the May, 1983 Term of Criminal Court. 8. That this case will be rescheduled for criminal court during September, 1983.

At the hearing on this petition, the court again granted the motion with the clear understanding that trial would take place before October 15, 1983. The defense once again formally objected to the motion without specificity. Trial then was set for October 5 of that year, and a jury was selected to hear the case.

The Appellee failed to appear for trial, and a bench warrant was issued for him. On October 7, 1983, the Commonwealth was notified that Appellee had been arrested by Maryland authorities, and the Commonwealth initiated extradition proceedings. Because the Appellee failed to appear for trial, the district attorney, on October 13, 1983, successfully obtained another extension, citing the defendant's fault as the basis for the motion. Evidence was also placed before the court that the defendant was opposed to extradition. His defense counsel, indicating that his client rejected this extension of time, was asked by the Court:

Mr. Blakely: Your Honor, Mr. Bond called our office yesterday from Maryland and indicated to our secretary that he wishes us to enter his opposition to the extension of time.

The Court: Can you think of any basis for his objection?

Mr. Blakely: No, I can't. Your Honor.

The Court: We'll grant the motion.

On December 13, 1983, Appellee was found guilty by a jury of the crime of receiving stolen property, and on

October 24, 1984, he was sentenced to a term of imprisonment of one (1) to four (4) years. The Superior Court, 354 Pa.Super. 623, 508 A.2d 338 (per curiam) reversed the judgment of sentence and discharged the Appellee on the grounds that "there is merit in Appellant's argument that he did not receive a speedy trial as required." The Superior Court also concluded that the "mere averment of due diligence in a petition to extend is not sufficient to support an extension."

The right to a speedy trial has been incorporated into our jurisprudence in order to serve two important functions: 1) to protect the accused's right to a speedy trial; and 2) to protect the right of society to punish offenders and deter crime. Our law holds, of course, that a defendant can be prosecuted as long as the Commonwealth does not engage in misconduct which evades his rights. *Commonwealth v. Genovese,* 493 Pa. 65, 425 A.2d 367 (1981). Any risk of dismissal is justified by the defendant's right to a speedy trial and, indeed, can be avoided by the exercise of due diligence on the part of the Commonwealth, *Commonwealth v. Mitchell,* 472 Pa. 553, 372 A.2d 826 (1977); *Commonwealth v. O'Shea,* 465 Pa. 491, 350 A.2d 872 (1976); and *Commonwealth v. Shelton,* 469 Pa. 8, 364 A.2d 694 (1976).

When faced with potential delays, Rule 1100 itself provides that the Commonwealth may seek relief by requesting extensions as provided under subsection (c):

(c)(1) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial.

(2) A copy of such motion shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon.

(3) Such motion shall set forth facts in support thereof, and shall be granted only upon findings based upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Common-

wealth and, if the delay is due to the court's inability to try the defendant within the prescribed period, upon findings based upon a record showing the causes of the delay and the reasons why the delay cannot be avoided.

(4) Any order granting a motion for extension shall specify the date or period within which trial shall be commenced. Trial shall be scheduled for the earliest date or period consistent with the extension request and the court's business, and the record shall so indicate.

In *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345, 1349 (1976), we interpreted this Rule as follows:

Henceforth, the trial court may grant an extension under Rule 1100(c) only upon a *record* showing (1) the due diligence of the prosecution, *and* (2) certification that trial is scheduled for the earliest date consistent with the Court's business; provided that if the delay is due to the Court's inability to try the defendant within the pre-scribed period, the *record must also show* the causes of the Court delay and the reason why the delay cannot be avoided. (Emphasis provided.)

In sum, in order to give practical effect to the speedy trial rule, our law demands that "findings based upon a record" must be made by a court. In this manner, the rule consti-tutes a matter of the sufficiency of the evidence justifying an extension, as explicitly recorded, in order to substantiate the Commonwealth's allegation that, despite its own due diligence, the defendant could not have been tried promptly. The issue, therefore, is the nature of the legal test to be utilized in determining whether the record, indeed, is suffi-cient as a matter of law or whether it amounts to "mere assertions" or "bare allegations" as maintained by the Appellee. In this appeal, the Commonwealth insists that the test can be met and a "finding" established by employ-ing the simple mechanism of having a trial court take judicial notice of its own docket in those instances where the record falls short of fulfilling statutory requirements. As stated, however, this solution fails to articulate accurate-ly the status of our jurisprudence on this subject.

■ We distinguish at the outset between those county judicial systems where the district attorney controls the criminal trial docket and those where the court itself administers its own docket. In the latter type systems, we have developed a substantial body of law which accepts the legal conclusion that our courts are empowered fully to take judicial notice of their own criminal dockets. *Commonwealth v. Coleman*, 477 Pa. 400, 383 A.2d 1268 (1978), is a plurality opinion in which we approved the lower court's taking judicial notice of the manner in which the court administrator scheduled criminal matters; in *Commonwealth v. Ehredt*, 485 Pa. 191, 401 A.2d 358 (1979), where we held specifically that judicial notice might be acceptable for proving scheduling difficulties; in *Commonwealth ex rel. Kelley v. Brown*, 327 Pa. 136, 193 A. 258 (1937), where we accepted judicial notice of number of orders, number and disposition of cases, etc.; and in *Sherman v. Baltimore and Ohio Railroad Co.*, 122 F.Supp. 492 (W.D.Pa.1954) in which judicial notice of crowded and congested dockets in the court's district was permitted.[1] Under these circumstances, we find a legitimate practice by the courts in protecting the constitutional integrity of defendants. Here, the test of legal sufficiency can be met successfully.

■ On the other hand, where the representative of the Commonwealth is responsible for scheduling cases, as is the matter under review, we demand faithful compliance with the legal forms of proof. In this context, we manifest a strong preference for a detailed recorded inquiry into the Commonwealth's assertions of necessary delay, including submission to the court of trial schedules and justifications. Only in this fashion can the integrity of our judicial system be sustained against criticisms that delays are being fraud-

---

1. We note as well that the Superior Court also has held that a judge who has an intimate knowledge of the court calendar should be able to take judicial notice of his own knowledge. *Commonwealth v. Stumpo*, 306 Pa.Superior Ct. 447, 452 A.2d 809 (1982); and *Commonwealth v. Jackson*, 269 Pa.Superior Ct. 249, 409 A.2d 873 (1979). Allocatur was denied in *Jackson* on November 14, 1980, and denied in *Stumpo* on February 25, 1983.

ulently disguised by nebulous assertions of crowded court calendars.

Having once again emphatically underscored the orthodox rule, we nevertheless must embody in our present analysis a common sense recognition of a different standard of review in situations which involve our rural counties. There the realities of judicial practice, as in this case, are one-judge districts, one courtroom, limited trial calendars, and intimate bar associations.[2] Such factors compel a practical recognition that the sufficiency of the evidence for delay presented by the district attorney is tested by the knowledge which the trial judge possesses of his own work schedule. It would be both legally frivolous and intellectually foolish to insist upon an application of hypertechnical hearing procedures where the judge is the only judicial officer in town and would be forced to engage in questioning for which he already knew the answers. Under this analysis, therefore, the sufficiency of the Commonwealth's petition can be tested easily by the trial court's own knowledge. Such a conclusion, of course, logically derives from the good faith judicial standards used by our trial courts as the paramount expressions of the moral sense of the community.

Finally, this determination must be qualitatively distinguished from that conclusion which permits a court to take judicial notice of its own controlled calendar. Here we are utilizing only the court's knowledge to test and determine the nature of the Commonwealth's case, and we limit our holding to those peculiar factual circumstances elaborated

2. Clearfield County is a one-judge County in which all matters, criminal, civil, domestic, estate, etc. are handled by one judge, with help, from time to time, from visiting and/or senior judges. In 1983, the year in which the events pertinent to this appeal occurred, the single judge disposed of 461 criminal cases, 100 civil cases, 585 domestic relations cases, 323 divorce cases, 143 juvenile cases, and 116 custody and adoption cases. All of these cases were handled by one judge in one courtroom facility (see Table 10, Common Pleas Case Volume by County, 1983 Annual Report AOPC). The purpose of listing this statistical information is to demonstrate the intense familiarity of this judge with all of the case load activities of his own courtroom.

in the foregoing analysis. Surely this determination will not work in those judicial districts with more complex administrative systems.

■ As applied to the facts of the instant appeal, we find that although the record before the court, as well as the arguments, were insufficient under the statute, the petitions passed constitutional muster by virtue of the trial court's ability to gauge the sufficiency of the Commonwealth's case by its own intimate knowledge of a judicial system and schedule. We take special note of the fact that in his written opinion, the trial judge agreed "that there existed a sizeable criminal trial list of which the appellant's case was but one." He noted further that he was "fully satisfied that the Commonwealth exercised due diligence.... there was nothing the Commonwealth could have done to accelerate the disposition of this case and avoid the need for extensions." [3]

For these reasons, there is no need to address the second question presented for review by the Commonwealth.[4]

3. As to the third and last petition for extension, we point out that the Commonwealth was prepared to go to trial with a picked jury on October 5, 1983, only to be frustrated by the defendant's unavailability due to his arrest by Maryland authorities. Such a contingency is governed by Rule 1100(d) which provides:

(d) in determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest; provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence;

(2) any period of time for which the defendant expressly waives Rule 1100;

(3) such period of delay at any stage of the proceedings as results from:

(i) the unavailability of the defendant or his attorney;

(ii) any continuance granted at the request of the defendant or his attorney.

4. In this conjunction, we point out that in *Commonwealth v. Hollingsworth*, 346 Pa.Superior Ct. 199, 499 A.2d 381 (1985), allocatur pending, 1244 E.D. 1985, the Superior Court said:

... [W]here the defendant files *no* answer to an extension petition and does *not* contest the specific facts cited in the petition, but instead rests on his general denial that the Commonwealth has

Accordingly, the decision of the Superior Court is reversed, and the judgment of sentence is affirmed.

NIX, C.J., did not participate in the consideration or decision of this case.

FLAHERTY, J., joins the Majority Opinion.

McDERMOTT, J., files a concurring opinion.

LARSEN, J., files a concurring opinion.

ZAPPALA, J., files a dissenting opinion.

HUTCHINSON, J., dissents without an opinion.

LARSEN, Justice, concurring.

I join in the reversal of Superior Court. I write separately, however, to express my strenuous objection to the majority's creation of different standards of proving due diligence, under Pa.R.Crim.P. Rule 1100(c)(3), on the basis of the number of common pleas judges sitting on the bench in any given county and on whether the court or the prosecution schedules criminal trials. There is no support provided by the language of this rule for such distinctions and the creation of these distinctions is not necessary for the disposition of any case. I also disagree with the majority's conclusion that "although the record before the court, as well as the arguments, were insufficient under the statute, the petitions passed constitutional muster." Maj. op. at 180. This case does not present a constitutional issue.

exercised due diligence, the specific factual allegations made by the Commonwealth, if believed by the court, must be deemed admitted, and the only question then remaining is whether those allegations amount to due diligence as a matter of law.... It would be the height of 'strained and illogical judicial construction' were we to discharge this defendant simply because the Commonwealth failed to have a witness mount the stand, be sworn, and provide formal testimony to establish a fact that no one even questioned. 346 Pa.Superior Ct. at 218–219, 499 A.2d at 391.

The judgment of the Court herein is consistent with the law of *Commonwealth v. Hollingsworth,* 346 Pa.Super. 199, 499 A.2d 381 (1985), *allocatur denied,* Pa., 527 A.2d 536 (Table—1987), wherein Superior Court held that a criminal defendant's general denial of due diligence admits all well-pleaded facts which the defendant does not specifically deny and the court accepts as true, and preserves only the issue whether the uncontroverted facts are sufficient to show due diligence as a matter of law.

My review of the record reveals that appellee, Roy Gray Bond, did not object during any of the three extension hearings to appellant's assertion that a crowded docket prevented the case from going to trial within 180 days or the granted extension periods. As no facts were in issue, therefore, it is only necessary for this Court to determine whether 1) the trial court accepted appellant's well-pleaded facts as true, and 2) the uncontested facts were sufficient to show due diligence as a matter of law.

Although the trial court did not state at the time of hearing that it accepted appellant's well-pleaded facts as true, it is clear that the trial court ruled in appellant's favor in granting the petitions for extension on the basis of those facts. In its opinion, the trial court states:

During the time period involved in this case, there existed a sizeable criminal trial list of which the [appellee's] case was but one.... This Court *was,* and is, fully satisfied that the Commonwealth exercised due diligence in attempting to bring [appellee's] case to trial. In fact, *there was nothing the Commonwealth could have done to accelerate the disposition of the case* and avoid the need for extensions.

Memorandum of the Court at 4 (March 19, 1985) (emphasis added).

Appellant scheduled this case for trial both before the Rule 1100 run date and at the earliest dates consistent with its extension requests and the court's business. Rule 1100

requires no more of the Commonwealth. *See Commonwealth v. Morales,* 508 Pa. 51, 494 A.2d 367 (1985). Due diligence was shown as a matter of law, therefore Superior Court erred when it determined that the record did not support the extensions granted by the trial court.

McDERMOTT, Justice, concurring.

I concur in the result. I write separately only to emphasize that the problems illustrated by this case demonstrate once again the need for modifications in Rule 1100. *See Commonwealth v. Crowley,* 502 Pa. 393, 405, 466 A.2d 1009, 1015 (1983) (McDermott, J. concurring).

ZAPPALA, Justice, dissenting.

It now appears that application of Rule 1100 occupies the realm of mystery as well as that of fact. Substantiation of propositions by facts on the record, a benchmark of our system of judicial resolution of cases, has been cast aside. In its place is set up an ethereal reference point unable to be challenged because unable to be grasped.

Nearly four years ago to the day, in *Commonwealth v. Crowley,* 502 Pa. 393, 408, 466 A.2d 1009, 1017 (1983) (Zappala, J., dissenting), I stated that Rule 1100

was promulgated to ensure a defendant's constitutional right to a speedy trial and to avoid a case by case review to determine whether that right has been violated. It is totally illogical to have a rule designed to protect both an individual defendant and society at large and now to apply that rule in such an elastic fashion so as to accommodate the practices of various judicial districts.

Adhering to the view there expressed, I dissent, and would affirm the order of the Superior Court.