J-S37016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL CALISTO, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL RODGERS | : | No. 2834 EDA 2018 |

Appeal from the Judgment Entered November 2, 2018,
in the Court of Common Pleas of Philadelphia County,
Civil Division at No(s):  160801903.

BEFORE:  BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

DISSENTING MEMORANDUM BY BOWES, J.:          Filed: August 6, 2020

I cannot join the Majority memorandum.  In my view, my learned colleagues have ventured far afield from the record and issues that are properly before us in this appeal.  Furthermore, the Majority's analysis is based upon a misunderstanding and misapplication of several relevant legal principles, and results in an inappropriate disposition of this appeal.  Therefore, I dissent, and offer the following discussion of my main areas of disagreement.

**I.    The Majority fails to view the record in the light most favorable to the verdict winner and misuses judicial notice to improperly augment the certified record.**

The trial court found that Rodgers and Calisto had an oral agreement for the sale of three properties that Calisto inherited from his mother; that Calisto executed a sales agreement when Rodgers supplied a cash down payment; that Calisto provided Rodgers with deeds to the properties upon

Rodgers's cash tender of the remainder of the sale price; and that Calisto feigned ignorance of the deal and accused Rodgers of fraud when Rodgers went to take possession of the properties. While professing adherence to the proper standard of review, the Majority nevertheless proceeds to view the evidence in a light most unfavorable to Rodgers, the verdict winner, in reviewing this appeal. [1] *See* Majority Memorandum at 18, 25 (observing that dates on the deeds "cast doubt upon Rodgers'[s] story"); *id*. at 26

---

[1] For example, the Majority's factual summary of record omits reference to evidence supporting the trial court's determination that Calisto's story was incredible. The record shows that Calisto at no time sought to have the properties transferred into his name, because he never had "[a] disposable $5,000" to cover the transfer fees. *See* N.T. Trial, 3/26/18, at 168. Further, under his management, the properties fell into such disrepair that the city of Philadelphia filed blighted-property conservatorship actions against them. *Id*. at 145. Additionally, Calisto was cited for numerous property violations, and owed thousands of dollars in back taxes. *Id*. at 150-51. A tenant in one of the duplexes remained in his apartment although he stopped paying rent in 2008, but Calisto took no steps to evict him because he lacked funds to pay a lawyer. *Id*. at 163. Moreover, Calisto personally was subject to a $160,000 judgment in 2012. *Id*. at 153.

Yet, despite his lack of funds to satisfy any of his obligations or to have the properties transferred to his name, Calisto purported to have accumulated $20,000 to pay contractors to do repair work on the dilapidated properties and "was prepared that very day in July 2016" to begin fixing up the duplexes when, in a stroke of incredible misfortune, "this thing with Rodgers happened." *Id*. at 168-69. *See also id*. at 170 ("That very day, that very day, I was actually recounting in my head who I was going to call that day. I had a list of contractors, people who were ready to go."). According to Calisto, "that thing" included being assaulted by Rodgers's locksmith and having eight Russians show up and seize one of the properties. *Id*. at 106, 114.

(highlighting inconsistencies in the versions of events offered by Rodgers and a witness to the transaction).

It is well settled that "our standard of review [following a non-jury verdict] demands that we consider the evidence in a light most favorable to the verdict winner." *Levitt v. Patrick*, 976 A.2d 581, 589 (Pa.Super. 2009) (internal quotation marks omitted). Further, "[w]hen reviewing the results of a non-jury trial, we give great deference to the factual findings of the trial court." *Recreation Land Corp. v. Hartzfeld*, 947 A.2d 771, 774 (Pa.Super. 2008). Accordingly, this Court must accept the trial court's findings because they are supported by the record,[2] not, as the Majority contends, because Calisto fails to challenge them.

The Majority further stumbles out of the gate by including within its scope of review evidence that is not properly before this Court in this appeal through the incorrect use of judicial notice. Specifically, the Majority discusses Rodgers' case against Calisto, which has absolutely no bearing on this appeal, by relying upon an uncertified copy of a transcript from that case that Calisto appended to his supplemental brief. After reciting Calisto's self-serving testimony, which was expressly rejected by this trial court, the Majority proceeds to take judicial notice not merely of the existence of a judgment in the Rodgers case, but the entire record of the case. *See* Majority

_____

[2] *See* N.T. Trial, 3/27/18, 35-66, 158-65; Plaintiff's Exhibit 4.

- 3 -

Memorandum at 1-3, 6. The Majority then pronounces that two judges reached "diametrically opposite conclusions" in the two cases, with the judgment in the case that is not before us having become not only a final judgment, but a final judgment on the merits. *Id*. at 10, 18-19 n.7.

It is axiomatic that "an appellate court is limited to considering only the materials in the certified record when resolving an issue." *Ruspi v. Glatz*, 69 A.3d 680, 691 (Pa.Super. 2013) (internal quotation marks omitted). Indeed, "any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record." *Id*. (internal quotation marks omitted).

The Majority speaks of the "*Ruspi* Rule" as if the principle had not been long-established before that case was decided. *See* Majority Memorandum at 9 n.3. Far from it, the portions of *Ruspi* quoted by the Majority are taken from this Court's decision in *Commonwealth v. Preston*, 904 A.2d 1 (Pa.Super. 2006). The *Preston* opinion, in turn, noted that "[t]he law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal," and cited for that proposition *Commonwealth v. Bracalielly*, 658 A.2d 755, 763 (Pa. 1995); *Commonwealth v. Baker*, 614 A.2d 663, 672 (Pa. 1992); *Commonwealth v. Quinlan*, 412 A.2d 494, 496 (Pa. 1980); and *Commonwealth v. Young*, 317 A.2d 258 (Pa. 1974). *Preston*, *supra* at 6. *See also* Pa.R.A.P. 1921, *Note* ("An appellate court

may consider only the facts which have been duly certified in the record on appeal.").

The Majority suggests that Pa.R.E. 201 is an exception to this canon of appellate review and allows it to take judicial notice of the other case's record. **See** Majority Memorandum at 9 n.3. Rule 201 governs the circumstances when a court may take judicial notice of an adjudicative fact. "Judicial notice allows the trial court to accept into evidence indisputable facts to avoid the formality of introducing evidence to prove an incontestable issue. However, the facts must be of a matter of common knowledge and derived from reliable sources whose accuracy cannot reasonably be questioned." **Kinley v. Bierly**, 876 A.2d 419, 421 (Pa.Super. 2005) (cleaned up).

Adjudicative facts subject to judicial notice under Rule 201 "are facts about the events, persons and places relevant to the matter before the court." Pa.R.E. 201, Comment. Such adjudicative facts properly established through judicial notice include, for example, the day of the week upon which a certain date falls, **Mentz v. Unemployment Comp. Bd. of Review**, 370 A.2d 1232, 1233 (Pa. 1977); "geographical facts such as the county in which a city or town is located, or the distance between places," **Goff v. Armbrecht Motor Truck Sales, Inc.**, 426 A.2d 628, 630 (Pa.Super. 1980); and the qualities and properties of matter, such as that cement does not ordinarily give way under the weight of an average person. **Walters v. Char-Mar, Inc.**, 284 A.2d 139, 143 (Pa.Super. 1971).

A court may take judicial notice of uncontested notations on its own docket and in record in the case before it.  ***See***, ***e.g.***, ***Commonwealth v. Bond***, 532 A.2d 339, 343 (Pa. 1987); ***Commonwealth v. Harris***, 462 A.2d 725, 729 (Pa.Super. 1983).  However, time and time again, dating back nearly a century, Pennsylvania appellate courts have rejected the use of judicial notice to import the record of one case into another.  ***See***, ***e.g.***, ***Callery v. Blythe Township Municipal Authority***, 243 A.2d 385 (Pa. 1968) (citing ***Naffah v. City Deposit Bank***, 13 A.2d 63, 64 (Pa. 1940) ("It is well established that a court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court.").  ***See also Richner v. McCance***, 13 A.3d 950, 957 n.2 (Pa.Super. 2011) (same, noting the lack of this Court's authority to take judicial notice of a stay order entered in another case); ***In re J.C.***, 5 A.3d 284, 289 (Pa.Super. 2010) (same, refusing to take judicial notice of a custody order entered in another case); ***In re Estate of Brockerman***, 480 A.2d 1199, 1202 (Pa.Super. 1984) (same, refusing to take judicial notice of estate accounts filed of record in another case).

Accordingly, the Majority's use of judicial notice in this case is improper. No testimony, evidence, or other record from the subsequent ***Rodgers*** case cited and discussed by the Majority is properly before us in this appeal.  This

decision must be based solely upon the certified record in this appeal, viewed in the light most favorable to Rodgers as the verdict winner.

**II.    The Majority misapprehends the purpose and requirements of the statute of frauds and misapplies it to overturn a properly-reached verdict in this case.**

The purpose of the statute of frauds is "the prevention of successful fraud by inducing the enforcement of contracts that were never in fact made. **It is not to prevent the performance or the enforcement of oral contracts that have in fact been made**." *In re Beeruk's Estate*, 241 A.2d 755, 758 (Pa. 1968) (cleaned up, emphasis added). *See also Zuk v. Zuk*, 55 A.3d 102, 107 (Pa.Super. 2012) ("Pennsylvania courts have emphasized that the Statute is not designed to prevent the performance or enforcement of oral contracts that in fact **were** made." (emphasis in original, internal quotation marks omitted)).

"The Statute of Frauds does not void those oral contracts relating to land which fail to comply with the Statute's formal requirements." *Fannin v. Cratty*, 480 A.2d 1056, 1059 (Pa.Super. 1984)). Rather, it "prevent[s] the enforcement of unfounded fraudulent claims by requiring that contracts pertaining to interests in real estate be supported by written evidence." *Strausser v. PRAMCO, III*, 944 A.2d 761, 765 (Pa.Super. 2008) (internal quotation marks omitted).

A writing need not be so formal as a deed to fulfill the statute's requirements. Instead, a court "should always be satisfied with some note or

memorandum that is adequate to convince the court that there is no serious possibility of consummating fraud by enforcement." ***Beeruk's Estate***, ***supra*** at 758 (cleaned up). "When the mind of the court has reached such a conviction as that, it neither promotes justice nor lends respect to the statute to refuse enforcement because of informality in the memorandum or its incompleteness in detail." ***Id***.

This Court has noted that the writing necessary to satisfy the statute "need only contain a sufficient statement of the terms of the agreement and the signature of the grantor." ***In re Estate of Dotterrer***, 579 A.2d 952, 954 (Pa.Super. 1990). Similarly, "there is no requirement in the Statute or the decisional law that a signature be in any particular form." ***Hessenthaler v. Farzin***, 564 A.2d 990, 993 (Pa.Super. 1989).

> Instead, the focus has been on whether there is some reliable indication that the person to be charged with performing under the writing intended to authenticate it. Thus, for example, the Restatement (Second) of Contracts provides that:
>
> > The signature to a memorandum may be **any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer**.

***Id***. (emphasis in original) (quoting Restatement of Contracts § 134).

The Majority's decision to overturn the verdict in this case is based upon a construction of the statute of frauds inconsistent with the above authority. The Majority operates under the misperception that the statute of frauds only allows courts to enforce contracts for the sale of land if a writing evidencing

- 8 -

the agreement is in and of itself an enforceable contract. *See* Majority Memorandum at 17. That is contradicted by the cases cited above: all that is required is some informal writing to support the existence of an oral contract. *See*, *e.g.*, *Beeruk's Estate*, *supra* at 758.

Furthering this misapprehension, the Majority also incorrectly deems any evidence of the oral agreement that was supported by the offered writings to be improper parol evidence because it does not rise to the level of "indubitable proof."[3] *See* Majority Memorandum at 20, 25 (quoting *Kurland v. Stolker*, 533 A.2d 1370 (Pa. 1987). *See also id*. at 37 (citing *Kurland* for the proposition that the written sales agreement in evidence in this case cannot satisfy the statute of frauds because it "only applies to these parties if Rodgers resorts to parol evidence and thereby converts it to an unenforceable parol agreement" ). The authority *supra* makes it abundantly clear that oral contracts that were, in fact, made are fully valid and enforceable so long as there is some note or memorandum sufficient to convince the court that

_____

[3] The Majority also conflates distinct legal principles by suggesting that the invalid deeds cannot serve as a writing in support of the fact that Calisto agreed to transfer the properties to Rodgers because the only means to effectuate a transfer of the properties to Rodgers was through a valid deed. *See* Majority Memorandum at 20. The question pertinent to the statute-of-frauds analysis is not whether Calisto completed a legal transfer of the properties to Rodgers when he provided Rodgers with the defective deeds that he signed on behalf of his mother. Rather, the question is whether the deeds, or any other writing in evidence, sufficiently supported the oral contract between the parties to render it enforceable.

enforcing the oral contract would not consummate fraud. *See*, *e.g.*, *Beeruk's Estate*, *supra* at 758.

The Majority relies heavily upon our Supreme Court's *Kurland* decision as a basis to reverse the trial court's verdict. *See* Majority Memorandum at 23-25, 27, 29. Such reliance is misplaced. *Kurland* involved a trial court's enforcement of an oral contract that was **unsupported by any writing**. In such cases, *Kurland* demands proof of the terms of the oral contract beyond a doubt to "take an oral contract out of the statute" and permit its enforcement. *Kurland*, *supra* at 1373. In the case *sub judice*, the trial court did not remove the case from the statute and enforce a purely oral agreement. Instead, it determined that the record contained writings sufficient to satisfy the statute of frauds. Therefore, *Kurland* is inapposite in deciding the question before this Court in the instant appeal—namely, whether one or more of the writings in evidence satisfied the requirements of the statute of frauds.

In my view, applying the proper law detailed above to the duly-rendered findings of the trial court, the statute of frauds serves as no basis to disturb the judgment in this case. Rodgers testified to the terms of an oral contract for the sale of the three properties to which Calisto agreed. The trial court believed Rodgers. The record contains a writing that supports the oral contract: the purchase agreement that listed the properties by address, identified Joan as the owner, stated the purchase price and the down payment, and was signed by Calisto, albeit on behalf of a fictitious selling company. The

purchase agreement was offered into evidence by Calisto. ***See*** Plaintiff's Exhibit 4. That writing was sufficient to satisfy the statute of frauds and establish that Calisto contracted with Rodgers to sell the properties.[4] ***Accord John Deere Co. v. Haralson***, 599 S.E.2d 164, 166–67 (Ga. 2004) (holding writing satisfied the statute of frauds in case in which the signature was illegible, the defendant's name was not printed on the writing, and the defendant denied signing it, because oral testimony established that the defendant was in fact the signatory, and such testimony did not implicate the parol evidence rule).[5] Therefore, the trial court did not err in concluding that Calisto failed to prove that he was entitled to a judgment in his favor on the quiet title claim upon which he bore the burden of proof. ***See***, ***e.g.***, ***Woodhouse Hunting Club, Inc. v. Hoyt***, 183 A.3d 453, 457 (Pa.Super. 2018) ("The plaintiff bringing a quiet title action has the burden of proof and must recover on the strength of its own title.").

The statute of frauds "is to be used as a shield and not as a sword, as it was designed to prevent frauds, not to encourage them." ***Empire***

_____

[4] The trial court relied upon the deeds rather than the purchase agreement as the significant writing. However, "it is well established that this Court may affirm a trial court's ruling on any basis." ***Zehner v. Zehner***, 195 A.3d 574, 582 n.12 (Pa.Super. 2018).

[5] I have discovered no Pennsylvania cases addressing this particular factual scenario. However, this Court, considering the validity of a signature on a form to change the beneficiary of an insurance policy, similarly affirmed a verdict based upon oral testimony that established that an illegible mark was that of the insured. ***See Tomilio v. Pisco***, 187 A. 86, 89 (Pa.Super. 1936).

- 11 -

***Properties, Inc. v. Equireal, Inc.***, 674 A.2d 297, 302 (Pa.Super. 1996) (internal quotation marks omitted). By casting aside the trial court's findings and awarding the properties to Calisto, the Majority allows Calisto to use the statute of frauds to perpetrate a fraud.

**III. The record does not contain sufficient evidence to support the Majority's decision to quiet title in the properties in favor of Calisto, and its *sua sponte* award of equitable relief to Rodgers exceeds our function as a reviewing court.**

The Majority remands for the trial court to quiet title in favor of Calisto. ***See*** Majority Memorandum at 39. This determination is based upon its conclusion that, because Rodgers had no enforceable interest in the properties, Calisto is the legal owner of them via his mother's will. ***Id***. at 27.

"[Q]uiet title serves to determine the relative and respective rights of all potential title holders." ***Becker v. Wishard***, 202 A.3d 718, 721-22 (Pa.Super. 2019). The litigation of an action to quiet title is governed by the Rules of Civil Procedure. ***See*** Pa.R.C.P. 1061-1068. A quiet title action may be brought:

(1) to compel an adverse party to commence an action of ejectment;

(2) where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land;

(3) to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land; or

- 12 -

(4) to obtain possession of land sold at a judicial or tax sale.

Pa.R.C.P. No. 1061(b).

Based upon the relief Calisto requested, it appears that the instant quiet title claim was made pursuant to Pa.R.C.P. 1061(b)(2), which allows a party to bring a quiet title action **only** "where an action of ejectment will not lie." Pa.R.C.P. 1061(b)(2).

"The purpose of an ejectment action as opposed to quiet title is not to determine the relative and respective rights of all potential title holders, but rather the immediate rights between plaintiff and defendant involved in that particular litigation." **Siskos v. Britz**, 790 A.2d 1000, 1006 (Pa. 2002) (internal quotation marks omitted). **See also** 4 Goodrich Amram 2d § 1061(b):3 ("The action to quiet title is designed to cover all the situations that ejectment cannot adjudicate; between the two actions, every available title question should be subject to adjudication in an action at law."). Accordingly, before even entertaining a quiet title action under Rule 1061(b)(2), the court first must determine who is in possession of the property at issue. **See Siskos**, **supra** at 1007.

Calisto did not allege that he was in possession of the properties at the time he filed the complaint. Nor did Rodgers's answer and new matter assert that he was in possession of any of the properties and that title should instead be quieted in him. Testimony at trial suggested Calisto maintained possession of some of the properties, while Rodgers secured another. **See** N.T. Trial,

J-S37016-19

3/26/20, at 114 (Calisto testifying that eight Russians showed up and seized one of the properties). The trial court did not make a determination as to possession, whether an ejectment action was available, or proclaim the respective rights of the title holders. Rather, with the quiet title and identity fraud causes of action before it, the trial court merely entered a general defense verdict.

Therefore, the Majority's direction to the trial court to enter a decree quieting title in all three properties in Calisto, without acknowledging the legal requirements of a quiet title action, let alone addressing how Calisto met his burden of proof to establish his claim, serves as further basis for my dissent. *See Siskos v. Britz*, 790 A.2d 1000, 1008 (Pa. 2002) ("Permitting an out-of-possession plaintiff to maintain an action to quiet title is impermissible because it constitutes an enlargement of the plaintiff's substantive rights as defined by statute, and thus exceeds the court's jurisdiction to proceed." (internal quotation marks omitted)); *Woodhouse Hunting Club, Inc. v. Hoyt*, 183 A.3d 453, 457 (Pa.Super. 2018) ("The plaintiff bringing a quiet title action has the burden of proof and must recover on the strength of its own title.").

Finally, the Majority supports its decision to *sua sponte* order Calisto to return the $150,000 purchase price to Rodgers with neither law nor facts. The Majority indicates that this Court is empowered to grant equitable relief to Rodgers because we granted Calisto the equitable relief he sought. ***See***

- 14 -

Majority Memorandum at 38. However, the Majority did not itself grant equitable relief to Calisto, it determined that the trial court committed an error of law and remands for the trial court to enter a decree consistent with this opinion. *See id*. at 10.

More significantly, while the Majority cites authority for the general proposition that a court sitting in equity may do justice for all litigants before it, *see id*. at 38, the Majority offers zero precedent that suggests that this Court, in reviewing a verdict in a quiet tile or any other action, may *sua sponte* grant relief to an appellee which he never requested and which was never considered by the trial court. Stated plainly, I believe the Majority has overreached by forsaking this Court's function as an error-correcting court and placing itself in the role of a trial court. Hence, even if I agreed that Calisto were entitled to relief, I would leave it for the trial court to determine in the first instance whether equity demanded corresponding relief to Rodgers.

## IV. Conclusion

For all of the above reasons and more, I cannot join the Majority. Therefore, I respectfully dissent.